Nos. 24-2643 & 24-2644 (cons.)

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

BENJAMIN SCHOENTHAL, et al.

Plaintiffs-Appellees,

v.

KWAME RAOUL, et al.

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division
No. 3:22-cv-50326
The Honorable Iain D. Johnston, Judge Presiding

_____

**REPLY BRIEF OF DEFENDANT-APPELLANT**
**EILEEN O'NEILL BURKE**

_____

EILEEN O'NEILL BURKE
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4366
jonathon.byrer@cookcountysao.org

CATHY MCNEIL STEIN
Chief, Civil Actions Bureau
JESSICA M. SCHELLER
Deputy Bureau Chief, Civil Actions Bureau
JONATHON D. BYRER
Supervisor, Civil Appeals & Special Projects
PRATHIMA YEDDANAPUDI
Assistant State's Attorneys
*Of Counsel*

# TABLE OF CONTENTS

_____

POINTS AND AUTHORITIES.........................................................................iii

ARGUMENT IN REPLY................................................................................ 1

**I.**  **Schoenthal Lacks Article III Standing To Seek A Declaration Regarding The Constitutionality Of The Public Transit Statute**........2

**II.**  **The Public Transit Statute Does Not Violate The Second Amendment**.......................................................................... 11

**III.**  **Government-Funded Public Transit Systems Are Sensitive Places.** ................................................................................23

CONCLUSION ......................................................................................... 27

CERTIFICATE OF COMPLIANCE WITH RULE 32(a).....................................vii

CERTIFICATE OF SERVICE ......................................................................vii

# POINTS AND AUTHORITIES

---------

## CASES

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.,*
   570 U.S. 205 (2013) ................................................................ 14

*Alfred L. Snapp & Son v. Puerto Rico,*
   458 U.S. 592 (1982) ................................................................ 15

*Alphonse v. Arch Bay Holdings, L.L.C.,*
   618 F. App'x 765 (5th Cir. 2015) .......................................... 4

*Babbitt v. UFW Nat'l Union,*
   442 U.S. 289 (1979) ................................................................. 5

*Bell v. Hood,*
   327 U.S. 678 ............................................................................ 4

*Bridgeville Rifle & Pistol Club, Ltd. v. Small,*
   176 A.3d 632 (Del. 2017) .................................................23 n.5

*California v. Texas,*
   593 U.S. 659 (2021) ......................................................... 2, 3, 4

*Campbell-Ewald Co. v. Gomez,*
   577 U.S. 153 (2016) ................................................................ 4

*Chapman v. Crane Co.,*
   684 F. App'x 825 (2d Cir. 2017) ............................................ 4

*Davis v. Massachusetts,*
   167 U.S. 43 (1897) ...................................................... 11, 22, 23

*D.C. v. Heller,*
   554 U.S. 570 (2008) ............................................................. 27

*Dep't of Revenue v. Davis,*
   553 U.S. 328 (2008) .......................................................... 12, 14

*Doe v. Elmbrook Sch. Dist.,*
   687 F.3d 840 (7th Cir. 2012) ............................................... 18

*Engquist v. Oregon Dep't of Agric.*,
    553 U.S. 591 (2008) ........................................................................ 11, 15

*Gilles v. Blanchard*,
    477 F.3d 466 (7th Cir. 2007) ............................................................ 20

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ........................................................................ 7, 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ........................................................................ 10

*Fowler v. Rhode Island*,
    345 U.S. 67 (1953) .......................................................................... 21

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ........................................................................ 7, 8

*Harp Advertising Ill. v. Village of Chicago Ridge*,
    9 F.3d 1290 (7th Cir. 1993) ............................................................ 5, 6

*Hartman v. Thompson*,
    931 F.3d 471 (6th Cir. 2019) .......................................................... 20 n.3

*Hohn v. United States*,
    524 U.S. 236 (1998) ........................................................................ 16

*Illinois v. Lidster*,
    540 U.S. 419 (2004) ........................................................................ 16

*Jacobson v. Florida Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020) ...................................................... 8

*Johnson v. Advocate Health & Hospitals Corp.*,
    892 F.3d 887 (7th Cir. 2018) .......................................................... 10

*Koons v. Platkin*,
    673 F. Supp. 3d 515 (D.N.J. 2023) ................................................ 19

*Lehman v. Shaker Heights*,
    418 U.S. 298 (1974) ........................................................ 12, 20 n.3, 24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 9

*Maldonado v. Morales,*
    556 F.3d 1037 (9th Cir. 2009) ................................................................. 8 n.1

*Mallory v. Norfolk S. Ry.,*
    600 U.S. 122 (2023) ...............................................................................23 n.5

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) .................................................................................... 1

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010) .................................................................................. 23

*Miller v. Smith,*
    No. 22-1482, 2023 U.S. App. LEXIS 1506 (7th Cir. Jan. 20, 2023) ............. 18

*Nashville, C. & St. L. R. Co. v. Wallace,*
    288 U.S. 249 (1933) ................................................................................ 2, 3

*Newman-Green, Inc. v. Alfonzo-Larrain,*
    490 U.S. 826 (1989) ................................................................................ 4, 9

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. 1 (2022) .............................................................................. passim

*Perry Education Ass'n v. Perry Local Educators' Ass'n,*
    460 U.S. 37 (1983) ................................................................................ 20 n.3

*Planned Parenthood of Greater Ohio v. Hodges,*
    917 F.3d 908 (6th Cir. 2019) ..................................................................... 19

*Renne v. Geary,*
    501 U.S. 312 (1991)) .................................................................................. 5

*Ricketts v. Midwest Nat'l Bank,*
    874 F.2d 1177 (7th Cir. 1989) ...................................................................... 4

*Rust v. Sullivan,*
    500 U.S. 173 (1991) ...................................................................... 14, 17, 19

*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.,*
    909 F.3d 1003 (7th Cir. 2019) .................................................................... 12

*Simic v. City of Chicago,*
    851 F.3d 734 (7th Cir. 2017) ........................................................................ 6

*Sheetz v. County of El Dorado,*
    601 U.S. 267 (2024) ................................................................ 22

*Skelly Oil Co. v. Phillips Petroleum Co.,*
    339 U.S. 667 (1950) .................................................................. 2

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) .................................................................. 2

*Sweeney v. Raoul,*
    990 F.3d 555 (7th Cir. 2021) ...................................................... 3

*United States v. Collins,*
    604 F.3d 481 (7th Cir. 2010) .................................................... 14

*United States v. Honeywell Int'l Inc.,*
    47 F.4th 805 (D.C. Cir. 2022) .................................................. 13

*United States v. Juvenile Male,*
    564 U.S. 932 (2011) .................................................................. 8

*United States v. Phillips,*
    645 F.3d 859 (7th Cir. 2011) .................................................... 25

*United States v. Rahimi,*
    602 U.S. 680 (2024) ............................................................ 16, 17

*United States ex rel. Yannacopoulos v. Gen. Dynamics,*
    652 F.3d 818 (7th Cir. 2011) .................................................... 24

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*
    529 U.S. 765 (2000) ................................................................ 13

*White v. Mass. Council of Constr. Emps., Inc.,*
    460 U.S. 204 (1983).................................................................. 12

*White v. United States,*
    601 F.3d 545 (6th Cir. 2010) ...................................................... 5

*Whren v. United States,*
    517 U.S. 806 (1996) ................................................................ 26

*Wolford v. Lopez,*
    116 F.4th 959 (9th Cir. 2024).................................................... 21

v

## STATUTES

18 U.S.C. § 287................................................................................... 13

28 U.S.C. § 2201................................................................................. 2

720 ILCS 5/21-5(a) ............................................................................ 13

## OTHER AUTHORITIES

Noah Feldman, *Chicago Gun Ruling Is Yet Another Absurd Decision*,
    BLOOMBERG OPINION (Sep. 7, 2024) ..................................................... 18

## ARGUMENT IN REPLY

---------

The district court lacked jurisdiction to grant Schoenthal a declaratory judgment regarding the Public Transit Statute's constitutionality because his alleged injury – his inability to bring firearms on public transit – would not be redressed by a judgment in his favor, given that the public transit systems independently prohibit firearms on their property. Even assuming he had standing, Schoenthal's claims fail, for two reasons. First, the Public Transit Statute is a condition on a public benefit – the regional public transit systems created by Illinois law – governed by the unconstitutional-conditions doctrine, application of which Schoenthal did not dispute below would defeat his claims. Second, public transit is analogous in every relevant respect to recognized sensitive places like schools and government buildings.

Unable to dispute that the public transit carriers' rules foreclose redressability, Schoenthal offers a mishmash of jurisdictional theories, all foreclosed by Supreme Court precedent. And only demonstrating why Article III standing is necessary to ensure adversarial presentation, *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007), Schoenthal makes no serious challenge to our arguments on the merits, nor explains how the facts sustain an as-applied constitutional challenge even on his preferred legal theory. We address these problems, in turn.

## I.  Schoenthal Lacks Article III Standing To Seek A Declaration Regarding The Constitutionality Of The Public Transit Statute.

The cornerstone of Schoenthal's response regarding standing is the notion that federal courts have freestanding Article III jurisdiction to award declaratory relief. Schoenthal Br. 7-8.  Not so – the declaratory judgment statute "alone *does not* provide a court with jurisdiction," so a court assessing "Article III standing . . . must look *elsewhere* to find a remedy that will redress the individual plaintiffs' injuries." *California v. Texas*, 593 U.S. 659, 672 (2021) (emphases added). Put differently, the court must apply Article III to the action as it would stand "in the absence of the declaratory judgment suit." *Id.* at 673 (quotation omitted). That is particularly true when the plaintiffs seek "a declaration that the statutory provision they attack is unconstitutional," because "that is the very kind of relief that cannot alone supply jurisdiction otherwise absent." *Id.* (citing *Nashville, C. & St. L. R. Co. v. Wallace*, 288 U.S. 249, 262 (1933)).

The declaratory judgment statute only confirms as much. That statute creates only a procedural right, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950), and "a procedural right in vacuo . . . is insufficient to create Article III standing," *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). In fact, the declaratory judgment statute does not even create statutory jurisdiction, because it only "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil*, 339 U.S. at 671.  This reflects that a court may issue a declaration only "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201.

Schoenthal's authority is inapposite. Schoenthal cites *Nashville* for the notion that "Article III jurisdiction is satisfied by a claim for declaratory relief that is accompanied by no other claims," Schoenthal Br. 8, but the Supreme Court reads *Nashville* otherwise. In fact, it specifically invoked *Nashville* as *support* for the rule that "a declaration that [a] statutory provision . . . is unconstitutional . . . is the very kind of relief that cannot alone supply jurisdiction otherwise absent." *California*, 593 U.S. at 673 (citing *Nashville*, 288 U.S. at 262). This court's decision in *Sweeney v. Raoul*, 990 F.3d 555 (7th Cir. 2021), is even farther afield. This court held the *Sweeney* plaintiffs did not have Article III standing, *id.* at 561, and did not discuss declaratory relief, let alone say anything even implying that their injuries were "redressable through *either* an injunction against Defendants or a declaration," Schoenthal Br. 7.

Under *California*'s instruction to consider the other requested relief when assessing standing, it is apparent Schoenthal lacks standing. Schoenthal does not dispute that fees and costs cannot confer standing.  *See* Burke Br. 8-9.  Nor does Schoenthal dispute that the district court considered his request for injunctive relief abandoned because he offered "no argument" on that request, SA51, or that his failure to cross-appeal forecloses any challenge to that determination, *see* Burke Br. 9. Rather, he offers a cursory argument that requesting injunctive relief in his *complaint* established jurisdiction throughout this suit. Schoenthal Br. 8. In other words, Schoenthal believes a plaintiff may manufacture jurisdiction to obtain

declaratory relief merely by including in his complaint a request for injunctive relief that he has no intention of actually pursuing and, in fact, never pursues.

Schoenthal offers no authority for that proposition, nor could he. While jurisdiction is *initially* assessed when the complaint is filed, *e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989), jurisdiction must *persist* throughout the litigation, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160-61 (2016).  Moreover, federal jurisdiction is lacking when a federal statutory claim is "immaterial to the true thrust of the complaint and thus made solely for the purpose of obtaining jurisdiction." *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1182 (7th Cir. 1989) (citing *Bell v. Hood*, 327 U.S. 678, 681-82 (1946)). Reflecting these facts, courts have repeatedly held that claims abandoned during litigation cannot support federal jurisdiction.  *E.g.*, *Chapman v. Crane Co.*, 694 F. App'x 825, 827-28 (2d Cir. 2017); *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 767 (5th Cir. 2015).

Here, it is evident that injunctive relief was not the true thrust of Schoenthal's complaint since he abandoned that relief at summary judgment, literally the first moment evidence was required. That deprived the district court of jurisdiction to grant injunctive relief, which under *California* also deprived it of jurisdiction to grant declaratory relief.  To say otherwise would effectively authorize the federal courts to issue advisory opinions on any subject matter so long as injunctive relief was simply mentioned in a complaint, effectively nullifying Article III's case-or-controversy requirement.

Even were Schoenthal's abandonment of injunctive relief not independently fatal to his standing to seek declaratory relief, the fact remains that he cannot show redressability because independent CTA, Metra, and private rules would still prohibit his desired conduct – bringing firearms on public transit – and subject him to criminal prosecution for trespass even if he obtained a declaration that the Public Transit Statute is invalid.  In response, Schoenthal claims that he has standing because striking down the Public Transit Statute would provide "some relief" for his injuries by relieving him of the risk of liability set forth in that statute, Schoenthal Br. 9, even if CTA and Metra still would not allow him to bring firearms on their trains and property. But those feared penalties are not injuries for purposes of a pre-enforcement challenge to a law. Rather, the injury is the plaintiff's inability "to engage in a *course of conduct* arguably affected with a constitutional interest." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979) (emphasis added). That is why *Renne v. Geary* saw "reason to doubt" the plaintiffs' standing when unchallenged campaign laws might "prevent candidates from mentioning party endorsements in voter pamphlets, even in the absence of" the law they did challenge. 501 U.S. 312, 319 (1991). That is why the plaintiffs in *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010), had no standing to challenge a federal cockfighting statute that *added* federal criminal penalties on top of the criminal penalties imposed by the uniform body of state laws already prohibiting cockfighting.  That is why *Harp Advertising Illinois v. Village of Chicago Ridge* concluded that the plaintiff lacked standing once it determined that success in its

5

challenge to a village ordinance "would not let it erect the proposed sign" because doing so was prohibited by another, unchallenged ordinance. 9 F.3d 1290, 1292 (7th Cir. 1993). That is why merely "[h]aving to defend oneself in a legal proceeding ordinarily does not give rise to a redressable injury," *Simic v. City of Chicago*, 851 F.3d 734, 739 (7th Cir. 2017), despite the obvious economic and reputational costs of doing so. That is why every case we relied on held that the existence of unchallenged laws independently prohibiting desired conduct negated redressability, without considering whether eliminating one law would reduce the plaintiffs' total criminal exposure. Burke Br. 13-15 & n.2 (collecting authority). And that is why the existence of unchallenged third-party rules prohibiting carriage of firearms on public trains – the exact conduct affected with a constitutional interest Schoenthal desires – deprives Schoenthal of standing here.

Seeming to recognize that his primary argument is hopeless, and having abandoned the other arguments he offered below, Schoenthal offers an entirely new argument. According to Schoenthal, the declaration he seeks regarding the Public Transit Statute would *invalidate* any similar rules imposed by nonparties, meaning "there is not actually any legally binding rule against [individuals] entering these carriers with their firearms, regardless of which government entity purported to enact it." Schoenthal Br. 12; *see id.* at 13 ("the Public Transit Statute and the bans instituted by the CTA and Metra rise and fall together").

This new argument rests on a fundamental misunderstanding of both declaratory judgments *and* redressability that the Supreme Court has decisively

rejected. In *Haaland v. Brackeen*, the Court held that the plaintiffs lacked standing to seek declaratory relief regarding the constitutionality of a federal statute requiring state courts to make certain considerations in cases involving the adoption of Native American children. 599 U.S. 255, 292 (2023). As the Court explained, a declaratory judgment resolves only the rights of the parties to the litigation and does not bind "nonparties" to the litigation, so the constitutional challenge the petitioners raised "would not be settled between petitioners and the officials who matter" – the state officials and judges who actually enforce the federal statute – "which would leave the declaratory judgment powerless to remedy the alleged harm." *Id.* at 293.

That a federal resolution of the constitutionality of the challenged federal statute could alter third parties' conduct, or the outcome of subsequent legal proceedings, did not change this fact. The *Haaland* petitioners argued that "courts are likely to defer to a federal court's interpretation of federal law, thus giving rise to a substantial likelihood that a favorable judgment will redress their injury," and even offered evidence that "the trial court stated that it would follow the federal court's ruling on [petitioners'] constitutional claims." 599 U.S. at 293-94.  But the Court rejected that argument, explaining that redressability "'requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power.'"  *Id.* at 294 (cleaned up) (quoting *Franklin v. Massachusetts*, 505 U. S. 788, 825 (1992) (Scalia, J., concurring)). "Otherwise, redressability would be satisfied

7

whenever a decision might persuade actors who are not before the court—contrary to Article III's strict prohibition on issuing advisory opinions. It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Id.* (cleaned up); *accord*, *e.g.*, *United States v. Juvenile Male*, 564 U.S. 932, 937 (2011) (fact that "a favorable decision in this case might serve as a useful precedent for respondent in a hypothetical lawsuit" is insufficient to "save this case from mootness"); *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020) (noting "settled principle that it must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury") (cleaned up).[1]

*Haaland* conclusively forecloses Schoenthal's argument that a declaratory judgment here would render CTA and Metra rules irrelevant for redressability purposes.[2]  Just as was the case in *Haaland*, the declaratory judgment sought here would not – indeed, *could* not – have any binding effect on nonparties CTA or Metra. Thus, all that Schoenthal can say here is that an *opinion* explaining the basis of the declaratory judgment here would either (1) persuade CTA and Metra to decline to enforce their own rules out of fear of a lawsuit; or (2) have precedential or persuasive effect in a future suit challenging those rules.  But that is not the type of

---

[1]  While the Ninth Circuit has endorsed a broader view of redressability, *see Maldonado v. Morales*, 556 F.3d 1037, 1043-44 (9th Cir. 2009), that view is irreconcilable with *Haaland*.

[2] By so doing, it also resolves the serious question, ignored by Schoenthal, whether CTA and Metra are indispensable necessary parties.

redressability Article III contemplates. All that matters is whether the judgment of the court itself would likely redress the plaintiff's injuries; the "accompanying excursus on the meaning of the Constitution" cannot form the basis of Article III redressability. *Franklin*, 505 U.S. at 825 (Scalia, J., concurring). Given the unchallenged public transit rules prohibiting his desired conduct, the declaratory judgment sought here would not redress Schoenthal's injury, negating standing.

Next, Schoenthal does not dispute that entering CTA or Metra property with a firearm in violation of their policies constitutes criminal trespass, *see* Burke Br. 18, but claims that success here would collaterally estop a trespass charge by prohibiting us from disputing his "right to bring [his] firearms onto public transportation," Schoenthal Br. 14-15. In making this argument, Schoenthal forgets that, because Article III standing to request certain relief must have existed when he filed his complaint, *Newman-Green*, 490 U.S. at 830, subsequent developments in litigation cannot retroactively confer on the district court jurisdiction by broadening the preclusive effect of that relief beyond what it would have had "when the complaint was filed," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992). Put another way, while post-complaint events can *dissipate* federal jurisdiction, they cannot retroactively *create* jurisdiction "that did not exist at the outset." *Id.* Here, Schoenthal requested a declaration concerning the constitutionality of the Public Transit Statute, R. 1 at 20, not a broad declaration he had an absolute right to bring firearms on public transit immunizing him from every law, including ordinary laws of criminal trespass. When Schoenthal filed his

complaint, he could only speculate that the district court would make such a broad statement of law in an opinion resolving his request for declaratory relief; that is fatal because redressability requires proof that it is "likely, as opposed to merely speculative" that redress will be realized. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

Schoenthal's remaining arguments require little discussion. Schoenthal does not dispute that a ruling on his constitutional rights would not possibly invalidate private transit carriers' rules, since private entities are not subject to the Constitution. *See* Burke Br. 20-21. Rather, he complains that *we* did not "demonstrate that [he] will need to enter private property to access public transportation." Schoenthal Br. 13-14. This gets things exactly backwards – because federal courts presumptively lack jurisdiction, Schoenthal had the burden of proving that he would *not* need to enter private property, with the quantum of proof needed on summary judgment, Burke Br. 7-8, which cannot be defeated by a "mere scintilla of evidence," *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). What Schoenthal offers is hardly a scintilla: an inadmissible hearsay statement from a defunct web page archived in 2018. Schoenthal Br. 14 (citing archived link). Moreover, that archived page only undermines his argument, since it notes that private carriers "own or control the rights-of-way and most of the other facilities required for operations." Finally, Schoenthal offers a cursory argument that private entities whose activities are "intertwined" with Metra and CTA operations might be state actors, Schoenthal Br. 14, but this is pure

speculation – his brief identifies no evidence to that effect – and Article III requires more.

## II.     The Public Transit Statute Does Not Violate The Second Amendment.

Schoenthal's claims fare no better on the merits. The Supreme Court has repeatedly rejected the notion that the Second Amendment is "subject to an entirely different body of rules than the other Bill of Rights guarantees." *E.g.*, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (2022) (quotation omitted). That is significant because the Court has "long held the view that there is a crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage [its] internal operation." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 598 (2008) (quotation omitted). Reflecting this fact, the Supreme Court has applied a government-proprietor principle to cases arising under virtually every other right granted by the Constitution, Burke Br. 26-27, and first articulated that principle in a case involving a law prohibiting the "'discharge [of] any cannon or firearm'" on "'public grounds,'" *Davis v. Massachusetts*, 167 U.S. 43, 46 (1897) (quoting "revised ordinances of the city of Boston, (1893)"). That principle applies with particular force to government-funded benefits like public transit, which are governed by the unconstitutional-conditions doctrine. Burke Br. 25-26.

Crucially, Schoenthal does not seriously dispute that his claim fails under the unconstitutional-conditions doctrine. Schoenthal does not dispute that public transit is a public benefit that this court's precedent analyzes under the

unconstitutional-conditions doctrine. *See* Burke Br. 32 (citing *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1009 (7th Cir. 2019)). Nor does he dispute that, by providing public transit, the government is directly engaged in "'commerce.'" *See id.* at 39 (quoting *Lehman v. Shaker Heights*, 418 U.S. 298, 303 (1974). Rather, he argues that Illinois "has not acted as proprietor in banning firearms on public transit, but as sovereign," merely because it has acted via a statute "a normal proprietor cannot make or enforce," claiming that this makes this case different from cases where "'a state or local government enters the market as a participant.'" Schoenthal Br. 20-21 (quoting *White v. Mass. Council of Constr. Emps., Inc.*, 460 U.S. 204, 208 (1983)); *accord id.* at 24 (complaining that Illinois acted by enacting a "criminal statute").

Not so. As the Supreme Court has explained, "market participation joined with regulation" is "the usual situation" when a government acts in a proprietary capacity. *Dep't of Revenue v. Davis*, 553 U.S. 328, 348 (2008) (plurality) (collecting authority). In fact, *Davis* explains, *White* concluded that the government "took part in the market" when it expended its own funds on public projects; to the extent the government simultaneously issued an executive order regarding those projects that "bore the hallmarks of regulation," *White* "treated the regulatory activity . . . as terms or conditions of the government's efforts in its market role." *Id.* at 346. That is precisely what Illinois did here – it entered the collapsing market for mass transit by creating regional public transit systems and expending public funds on those systems, Burke Br. 2-4, then enacted legislation creating a term of access to that

12

system, *id.* at 4-5. That regulation is no less a term or condition of Illinois' market participation than the regulation in *White*. That this regulation carried with it criminal penalties for noncompliance does not change its essential character as a condition of market participation. That would have the absurd implication that Illinois is not acting in a proprietary capacity when it prohibits trespass on "land supported in whole or in part with State funds," merely because that prohibition is accompanied by criminal penalties. 720 ILCS 5/21-5(a). Or that the False Claims Act does not "protect[ ] the United States against 'proprietary injury,'" *United States v. Honeywell Int'l Inc.*, 47 F.4th 805, 816 (D.C. Cir. 2022) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)), merely because false claims also carry criminal penalties, 18 U.S.C. § 287.

Schoenthal's remaining arguments regarding the unconstitutional-conditions doctrine are easily set aside. Schoenthal declares, without elaboration or authority, that treating the Public Transit Statute as a condition on the use of a public benefit would somehow mean "every criminal statute could be reframed as an unconstitutional condition." Schoenthal Br. 24. That is unhelpful hyperbole, unless Schoenthal seriously holds the grotesque belief that statutes criminalizing murder and sexual assault restrict the use of public benefits. Schoenthal also declares that statutes regulating firearms on public sidewalks would be permissible under the unconstitutional-conditions doctrine, *id.*, but conspicuously cites no authority treating public sidewalks as a public benefit, and we are aware of none. He also ignores the overwhelming body of authority making clear that public sidewalks

occupy a unique place in our constitutional tradition that public transit does not

share. Burke Br. 39-40.  Schoenthal also makes a cursory argument that public

transit is supposedly operated in a "semi-private" manner, Schoenthal Br. 22, but

he does not elaborate further on what he bases this contention, why it helps him, or

even what he means. Such cursory arguments are forfeited. *United States v. Collins*,

604 F.3d 481, 487 n.2 (7th Cir. 2010).

Schoenthal further declares that restricting firearms on public transit is an

unconstitutional condition because he supposedly has a constitutional right to bring

firearms on public transit – in other words, that it is an unconstitutional condition

because it is an unconstitutional condition.  Schoenthal Br. 24-25.  Aside from being

circular, this fundamentally misunderstands the unconstitutional conditions

doctrine, which asks whether the condition seeks to prohibit "the protected conduct

*outside* the scope of" the public benefit at issue. *Rust v. Sullivan*, 500 U.S. 173, 197

(1991); *accord Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S.

205, 214-15 (2013). That reflects the longstanding principle that a "decision not to

subsidize the exercise of a fundamental right does not infringe the right." *Rust*, 500

U.S. at 193. Nothing about the Public Transit Statute regulates conduct outside the

public transit systems themselves. Rather, it reflects a decision not to subsidize the

use of state-created, state-funded public transit systems for armed travel, *see Davis*,

553 U.S. at 346, so the unconstitutional conditions doctrine here is easily satisfied.

Given that it is not seriously disputed here that the Public Transit Statute

satisfies the unconstitutional-conditions doctrine, the dispositive issue here is

whether that doctrine applies. On that subject, Schoenthal's primary argument is that *Bruen* categorically overrides the government-proprietor principle in the Second Amendment context. Schoenthal Br. 18-19. This simultaneously misunderstands the government-proprietor principle and overreads *Bruen*. The government-proprietor principle reflects a basic truth of our constitutional system: "that there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'" *Engquist*, 553 U.S. at 598. This truth rests on another, more basic, one: that "[n]ot all that a State does . . . is based on its sovereign character," but rather, "like other associations and private parties," a State has "nonsovereign interests" in "a variety of proprietary interests," such as "own[ing] land or participat[ing] in a business venture." *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 601 (1982). It is that fundamental distinction between sovereign activity and nonsovereign, proprietary activity that animates the three lines of analysis that govern constitutional scrutiny when the government acts as an employer, when the government regulates its own property, and when the government acts as a provider/funder of public benefits. Burke Br. 23-26.

*Bruen* says literally nothing casting doubt on *any* of these background principles, let alone anything exempting the Second Amendment from any of the normal methods of evaluating proprietary interests in general, or the unconstitutional-conditions doctrine in particular. That dooms any argument that

*Bruen* meant to overrule or even limit the applicability of the unconstitutional-conditions doctrine to Second Amendment claims, because the Supreme Court's decisions on a subject remain binding on the lower courts until they are expressly overruled, even if subsequent decisions are logically inconsistent or irreconcilable. *Hohn v. United States*, 524 U.S. 236, 252-253 (1998).  That *Bruen* contains broad general language regarding the Second Amendment right, Schoenthal Br. 19, does not change this fact, since the Court has cautioned that "general language in judicial opinions" must be read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering," *Illinois v. Lidster*, 540 U.S. 419, 424 (2004). That rule is dispositive here because Schoenthal does not claim, nor could he, that *Bruen* considered a law advancing New York's proprietary interests, rather than its sovereign interests. Indeed, that rule applies with particular force here; a near-unanimous Court has already taken great pains to caution against overreading *Bruen* to recognize an "unlimited" Second Amendment right or demand more than consistency with "the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 690-92 (2024). Given that the government-proprietor principle is one such principle, its application here is wholly consistent with *Bruen*.

Even assuming, for sake of argument, that *Bruen* meant to silently shoehorn the analysis of proprietary interests into its two-step analysis, the outcome here would be exactly the same, regardless of the step at which those interests are

considered. Doctrinally speaking, it makes eminent sense to consider the government's proprietary interests at the first, textual step of the *Bruen* analysis, if that analysis even applies, because the question whether government has regulated in a sovereign capacity or in a proprietary capacity most naturally implicates the textual question whether its regulations "infringed" the Second Amendment right. U.S. Constitution, Amendment II. That is particularly true of the unconstitutional-conditions doctrine at issue here, which provides a categorical answer to that textual question: that the government's proprietary "decision not to subsidize the exercise of a fundamental right does not *infringe* the right." *Rust*, 500 U.S. at 193 (emphasis added). Schoenthal's claim would thus fail at *Bruen*'s first step, even if it applied, since he does not seriously dispute that the unconstitutional-conditions doctrine is satisfied here. And even if governmental proprietary interests fell under *Bruen*'s second step, we have more than satisfied our modest burden to show that the Public Transit Statute is consistent with the cornerstone government-proprietor principle underlying this nation's regulatory tradition. *Rahimi*, 602 U.S. at 692. Indeed, we laid out at great length the depth of the regulatory tradition of giving special consideration to governmental proprietary interests, Burke Br. 23-26, specifically to head off any formalistic objection that we cannot invoke the unconstitutional-conditions doctrine without first satisfying *Bruen*'s second step by showing its consistency with this nation's regulatory traditions.

Schoenthal's remaining arguments regarding *Bruen* are easily disposed of – indeed, they were already addressed in our opening brief, which Schoenthal largely

ignores. Forgetting that this court's review here is de novo, *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 849 (7th Cir. 2012), Schoenthal declares his agreement with the district court's belief that *Bruen* "rejects the relevance of place" to the Second Amendment analysis, and that the government-proprietor principle is mere interest-balancing. Schoenthal Br. 20 (citing SA18, SA20). We disposed of both notions with actual argument and authority, Burke Br. 34-37 (citing *Miller v. Smith*, No. 22-1482, 2023 U.S. App. LEXIS 1506 (7th Cir. Jan. 20, 2023)), but Schoenthal ignores those arguments and *Miller* alike. And as to the latter point, Schoenthal offers no explanation how the unconstitutional-conditions doctrine, which asks merely whether a condition on government benefits regulates conduct *outside* the benefits program, could possibly be considered interest-balancing. Nor could he, because he misunderstands the interest-balancing that *Bruen* rejected. While *Bruen* was concerned about using interest-balancing to judicially negate an existing constitutional right, the government-proprietor principle honors the Framer's initial balancing of interests in drawing a line between sovereign activity and activity taken in a proprietary capacity. *See* Prof. Noah Feldman, *Chicago Gun Ruling Is Yet Another Absurd Decision*, BLOOMBERG OPINION (Sep. 7, 2024). Finally, Schoenthal relies on *Koons v. Platkin*, 673 F. Supp. 3d 515 (D.N.J. 2023), for support, Schoenthal Br. 20. But we already explained that *Koons* is irreconcilable with this court's precedent, Burke Br. 42; this is yet another argument Schoenthal simply ignores.

His other arguments failing him, Schoenthal is left with only *Bruen*'s statement that the Second Amendment "is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." 597 U.S. at 70 (cleaned up). For this statement to have any possible relevance here, Schoenthal must take the extraordinary position that there is no government-proprietor principle, in any form, "for *any* other constitutional right." Schoenthal Br. 21. But the only things "breathtaking" here, *id.* at 16, are the utter frivolity of this contention and the misrepresentations Schoenthal makes to advance it. Most obviously, Schoenthal does not dispute the existence of the unconstitutional-conditions doctrine, an application of the government-proprietor principle in the context of government benefits that applies across the *entire* Bill of Rights. *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 911 (6th Cir. 2019) (en banc). That doctrine has such breadth because the central principle it advances – that the government's proprietary "decision not to subsidize the exercise of a fundamental right does not infringe the right," *Rust*, 500 U.S. at 193 – "is a neutral one," under which the "assessment of [a] case turns on the nature of the unconstitutional-conditions doctrine, not on individual preferences with respect to this constitutional right or that one," *Hodges*, 917 F.3d at 915.

While the general applicability of the unconstitutional-conditions doctrine to all constitutional rights is enough to conclusively dispose of his assertion that the government's proprietary interests are categorically irrelevant to all constitutional rights, it is worth noting solely for sake of completeness that Schoenthal's

19

remaining arguments are nonsensical. Regarding the employment context, Schoenthal makes the bizarre argument that *Engquist* did not "equate the powers of 'proprietor' and 'employer,'" Schoenthal Br. 22, before immediately contradicting himself by quoting language from *Engquist* specifically identifying the government's role as employer as within the category of circumstances in which government is "acting as a proprietor," *id.* Even stranger is Schoenthal's argument that governments may exclude individuals from their property only if they are "disruptive," and that we "d[o] not have a single case" to the contrary. *Id.* at 22-23 (citing *Gilles v. Blanchard*, 477 F.3d 466, 469-70 (7th Cir. 2007)).[3] This is a perplexing assertion, since we repeatedly cited *Gilles*, Burke Br. 24-25, 36, 40, 42, which specifically stated that a government university "could if it wanted bar access to the lawn to any outsider who wanted to use it for any purpose, just as it could bar outsiders from its classrooms, libraries, dining halls, and dormitories. *It wouldn't have to prove that allowing them in would disrupt its educational mission.*" 477 F.3d at 470 (emphasis added). This, *Gilles* explained, is because "[t]he difference between invited and uninvited visitors is fundamental to a system of property rights." *Id.* Just as an ordinary private property owner may decline to allow armed individuals onto its property, Schoenthal Br. 45, so too may the government decline to invite

---

[3] In making this argument, Schoenthal states, without explanation, that CTA and Metra are "held open to the public." Schoenthal Br. 22. That cursory argument is forfeited, and also wrong – both charge fares, and allowing such "selective access" does not make a place open to the public. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47 (1983) (citing *Lehman*); *accord Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019) (no public forum where entry denied to public "unless they pay admission").

armed individuals to use its property, *Wolford v. Lopez*, 116 F.4th 959, 970-71 (9th Cir. 2024).[4] That is all that Illinois has done here.

Unable to muster any coherent argument in response to our points, Schoenthal dedicates the remainder of his response to a string of flagrant misrepresentations of our arguments and the legal authority on which they rest. For example, Schoenthal claims that we are advocating an extraordinary, "all encompassing" government-proprietor principle that would allow governments to discriminate against religious minorities, or conduct warrantless searches, on public transit. Schoenthal Br. 16-17. That is decidedly false in two respects. First, we never claimed that the government-proprietor principle is a freestanding rule of decision, but only a longstanding regulatory background principle that underlies three distinct bodies of law, one of which is the unconstitutional-conditions doctrine at issue here. *See* Burke Br. 23-25. Second, we made clear (1) that "discriminatory" regulation of government property is impermissible, citing authority prohibiting discrimination against particular religious groups, Burke Br. 24 (citing *Fowler v. Rhode Island*, 345 U.S. 67, 69 (1953)); and (2) that the Fourth Amendment "applies with full force" on government property because that right "protects people, not places," Burke Br. 37.

---

[4] While Schoenthal claims *Wolford* helps him here, Schoenthal Br. 27, he ignores that *Wolford* did not address government proprietorship of public transit because *Wolford* was a consolidated appeal challenging separate California and Hawaii regulations, and California argued only that public transit was sensitive, Burke Br. 42 n.9.

In virtually the same breath Schoenthal accuses us of advancing an all-encompassing legal rule, he goes on to claim we somehow also conceded that proprietary interests are "entirely irrelevant to most constitutional claims." Schoenthal Br. 17. Nonsense. In offering this falsehood, Schoenthal goes so far as to simply "omi[t]" from his purported quotation of our discussion of the Fifth Amendment, *id.* at 18, the very authority on which it relied. That obfuscates the fact that this authority specifically applied a standard "*modeled on the unconstitutional conditions doctrine*," *Sheetz v. County of El Dorado*, 601 U.S. 267, 275 (2024) (emphasis added) – a doctrine that is not only an application of the government-proprietor principle, but the specific proprietary doctrine directly at issue here. Even more egregious is Schoenthal's false claim that we agreed that the government's proprietary interests are "entirely irrelevant" to the First Amendment. Schoenthal Br. 17. As explained at some length and with ample supporting authority, public fora are a limited exception to the government's proprietary right to exclude First Amendment activity from its property. Burke Br. 27-30, 35-36, 37.

Finally, Schoenthal claims that the Supreme Court has "directly rejected" *Davis* in its entirety. Schoenthal Br. 26. That, too, is false. Again, while the Supreme Court limited *Davis*' application to speech in public fora, it expressly declined to overrule *Davis* in its entirety because the statute it considered was not

directed solely at speech. Burke Br. 27-28 (collecting authority).[5]  The mere fact that the Second Amendment was not yet incorporated, Schoenthal Br. 26, is irrelevant, since incorporation is an application of the Fourteenth Amendment's due process clause to a right enumerated elsewhere. *E.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 758 (2010). Schoenthal does not dispute that *Davis* interpreted that due process clause, and the Court declined to overrule *Davis* specifically *because* the statute there regulated conduct other than speech – including the discharge of firearms on public land.  *See* Burke Br. 27-28 & n.4.  It is thus binding here unless and until the Supreme Court specifically overrules it.

## III.  Government-Funded Public Transit Systems Are Sensitive Places.

Finally, government-funded mass transit is a sensitive place because it shares the core characteristics of recognized sensitive places such as schools, courthouses, polling places, and legislative assemblies.  Burke Br. 44-51.  Notably, Schoenthal does not seriously address this central point – he does not dispute that these are all characteristics of the sensitive places the Court has identified, nor does he seriously dispute that public transit shares all of them.  Rather, he argues only that *individual* aspects of those places do not suffice, viewed in isolation, to make a place sensitive as a matter of law.  *E.g.*, Schoenthal Br. 35-44, 63 (crowdedness, alone, does not suffice); *id.* at 62 (government ownership, alone, "sweeps far too

---

[5]  While the Delaware Supreme Court thinks *Davis* "no longer good law," *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 653 n.108 (Del. 2017), the Supreme Court says otherwise, and inferior courts lack authority to overrule the Court's precedent on its behalf, *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 136 (2023).

broadly"); *id.* at 63 (presence of children, alone, does not suffice). This misses the point – we never argued that any one specific characteristic sufficed, or even a specific combination of characteristics, but rather pointed out the host of similarities between public transit and spaces the Court has identified as sensitive. Burke Br. 50 (emphasis added). To that central argument, Schoenthal offers no response. Nor does he deny that public transit is similar to courthouses, polling places, and schools in two significant respects: (1) they involve captive audiences, *see* Burke Br. 47-48; *accord Lehman*, 418 U.S. at 302 ("The streetcar audience is a captive audience. It is there as a matter of necessity, not of choice.") (quotation omitted); and (2) they involve government activity inherently incompatible with the presence of private firearms, *see* Burke Br. 46-47. To the limited extent he addresses our arguments, he again misrepresents them. *Contrast* Schoenthal Br. 62 (claiming we "mak[e] no connection" between public transit and constitutional rights), *with* Burke Br. 51 ("Public transit also implicates a recognized constitutional right – the right to travel . . . .").

Schoenthal's counterargument – that only "places secured by its [sic] own comprehensive security" are sensitive, Schoenthal Br. 59 – fails, factually and legally. First, and most fundamentally, this case comes before this court on summary judgment, which requires the plaintiff to provide evidence sufficient to allow a factfinder to find in his favor on his preferred legal theory, *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 823 (7th Cir. 2011), and concerns an as-applied constitutional challenge, SA51-SA52, which is determined by

"only the facts of the case," not by "any set of hypothetical facts under which the statute might be unconstitutional," *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011). Despite that, Schoenthal's brief identifies no record evidence that the public transit systems at issue here, or even the specific parts of those systems he intends to use, do not have "comprehensive" security, nor does he acknowledge the record evidence on that subject. *See* R. 64 ¶¶44-46. Instead, he quotes a Delaware court decision, Schoenthal Br. 59, which obviously says nothing about the CTA or Metra. Absent facts, Schoenthal's as-applied challenge necessarily fails as a matter of law.

Second, Schoenthal's theory of Second Amendment sensitive places is unworkably absurd. To take a historical example, Schoenthal's theory means that John Wilkes Booth had an absolute Second Amendment right to enter President Lincoln's box at Ford's Theatre with the handgun that he used to end Lincoln's life *specifically because* Lincon's bodyguard had abandoned his post. So, too, would President Trump's would-be assassin have had a right to bring an assault rifle to his campaign rally, since the Secret Service failed to secure the rooftop where he laid in wait. Individuals would also have an absolute right to bring firearms into airplanes and nuclear facilities – despite the obvious catastrophes that could result from the discharge of firearms therein – whenever a lapse of security makes them insufficiently "secure." No less absurd is Schoenthal's own hypothetical, which would bar *this court* from prohibiting firearms at the oral arguments in this very case if *Congress* fails to provide sufficient funding for security that day. Schoenthal

Br. 60.  Schoenthal's rule invites such absurdities because it relies on transient happenstance – whether a place is sufficiently secure at any given moment – without any regard to the essential character of the activity conducted at that place or that activity's compatibility with private firearms.  Burke Br. 45-47. The Court has long rejected "variable" constitutional protections based on "police enforcement practices" that "vary from place to place and from time to time." *Whren v. United States*, 517 U.S. 806, 815 (1996). Such an unworkable, variable constitutional standard should be rejected here as well.

Unworkability aside, Schoenthal fundamentally misunderstands his own historical evidence – once again, because he simply ignores our authorities.  While Schoenthal claims that the government traditionally provided security for courthouses, legislatures, and polling places, Schoenthal Br. 51-58, that premise is false, as the State's reply explains.  Worse, Schoenthal simply leaps from that false premise to his desired conclusion that these historic places "were sensitive *because* the government treated them as such by providing comprehensive security." *Id.* at 59.  Schoenthal cites no historic authority for this leap – not a single law, judicial decision, academic treatise, or Federalist Paper.[6]  He also forgets that the government has a general monopoly on the use of force, to which the right to self-defense is a narrow exception. Burke Br. 45-46.  If the government traditionally

---

[6] The articles Schoenthal cites only share his willingness to leap from unremarkable facts to broad conclusions about the Framers' understanding of the Second Amendment.  *E.g.*, Schoenthal Br. 37 (citing article declaring that Blackstone's citation of political philosopher's works for certain points endorsed, *sub silentio*, that philosopher's uncited views regarding disarmament).

secured certain places, that would reflect only the exercise of that monopoly. Furthermore, because the government's exercise of its monopoly *diminishes* the right to self-defense, *id.*, evidence that the government traditionally secured sensitive places would only show that the historic right to individual self-defense was diminished in those places as well. Since that right to self-defense is "the *central component* of the right" codified by the Second Amendment, *D.C. v. Heller*, 554 U.S. 570, 599 (2008), characteristics of a place limiting the availability of self-defense necessarily limit the Second Amendment right as well.

## CONCLUSION

––––––––––

The judgment should be vacated and remanded with instructions to dismiss for lack of jurisdiction. If not, the judgment should be reversed and remanded with instructions to enter judgment for the defendants.

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

BY:   /s Jonathon D. Byrer
Jonathon D. Byrer
Supervisor, Civil Appeals & Special Projects
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4366
jonathon.byrer@cookcountysao.org

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

———————————————

In accordance with Fed. R. App. P. 32(g), I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i), as modified by Circuit Rule 32(c), because it contains 6,932 words, beginning with the words "Argument In Reply" on page 1 and ending with the words "Respectfully submitted" on page 27. In preparing this certificate, I relied on the word count of the word-processing system used to prepare the brief, which was Microsoft Word.

<u>s/ Jonathon D. Byrer</u>
Jonathon D. Byrer, Attorney

**CERTIFICATE OF SERVICE**

———————————————

I certify that on May 2, 2025, I electronically filed the attached Reply Brief of Defendant-Appellant Eileen O'Neill Burke with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/ Jonathon D. Byrer</u>
Jonathon D. Byrer, Attorney