Nos. 24-2643 & 24-2644 (cons.)

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

BENJAMIN SCHOENTHAL, et al.

Plaintiffs-Appellees,

v.

KWAME RAOUL, et al.

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division
No. 3:22-cv-50326
The Honorable Iain D. Johnston, Judge Presiding
————

**SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLANT**
**EILEEN O'NEILL BURKE**
————

EILEEN O'NEILL BURKE
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4366
jonathon.byrer@cookcountysao.org

CATHY MCNEIL STEIN
Chief, Civil Actions Bureau
JESSICA M. SCHELLER
Deputy Bureau Chief, Civil Actions Bureau
JONATHON D. BYRER
PRATHIMA YEDDANAPUDI
Assistant State's Attorneys
*Of Counsel*

## TABLE OF CONTENTS

_____

POINTS AND AUTHORITIES ................................................................... ii

SUPPLEMENTAL ARGUMENT .............................................................. 1

I.　Even Were The Public Transit Statute Unenforceable, The Ordinance Would Prevent Schoenthal From Bringing Arms On CTA Property. ................................................................................................ 2

　　A.　The Exception To The Ordinance Only Applies To Individuals Section 5/24-2 Authorizes To Carry Firearms On Transit........... 3

　　B.　Schoenthal Has Not Shown That He Is An Individual Section 5/24-2 Authorizes To Carry Firearms On Transit.......................... 6

　　C.　Invalidation Of The Public Transit Statute Would Not Change The Fact That Schoenthal Is Not An Individual Section 5/24-2 Authorizes To Carry Firearms On Transit. ................................... 10

　　D.　Any Belated Arguments In Favor Of Standing Here Are Waived, Forfeited, And Meritless. ................................................. 14

II.　*Gutierrez* Only Undermines Schoenthal's Standing Here. ................... 19

CONCLUSION ............................................................................................ 26

CERTIFICATES OF COMPLIANCE & SERVICE ............................... vi

# POINTS AND AUTHORITIES

―――――

**CASES**

*A.H. Phillips, Inc. v. Walling,*
    324 U.S. 490 (1945) ........................................................................... 4

*Bread PAC v. Federal Election Comm'n,*
    455 U.S. 577 (1982) ........................................................................... 3

*Center for Biological Diversity v. United States EPA,*
    937 F.3d 533 (5th Cir. 2019) ........................................................... 14

*Chicago v. Union Ice Cream Mfg. Co.,*
    96 N.E. 872 (Ill. 1911) ............................................................. 13 n.5

*Commissioner v. Clark,*
    489 U.S. 726 (1989) ........................................................................... 3

*Confederated Salish & Kootenai Tribes v. United States,*
    343 F.3d 1193 (9th Cir. 2003) ........................................................... 5

*Darensburg v. Metropolitan Transportation Comm'n,*
    636 F.3d 511 (9th Cir. 2011) ........................................................... 15

*Dotson v. Faulkner,*
    138 F.4th 1029 (7th Cir. 2025) ................................................... 10-11

*Employers Insurance v. United States,*
    815 F. Supp. 255 (N.D. Ill. 1993) ................................................. 1 n.1

*Griffin v. Oceanic Contractors,*
    458 U.S. 564 (1982) ......................................................................... 17

*Gutierrez v. Saenz,*
    No. 23-7809, 2025 U.S. LEXIS 2495 (June 26, 2025) ..............................passim

*Haaland v. Brackeen,*
    599 U.S. 255 (2023) ................................................................. 11 n.3

*Hernandez v. Cook County Sheriff's Office,*
    634 F.3d 906 (7th Cir. 2011) ........................................................... 15

*Hess v. Kanoski & Assocs.*,
   668 F.3d 446 (7th Cir. 2012) ................................................................. 4

*Hohn v. United States*,
   524 U.S. 236 (1998) .......................................................................... 25

*INS v. Chadha*,
   462 U.S. 919 (1983) ..................................................................... 12 n.4

*Kalodimos v. Morton Grove*,
   470 N.E.2d 266 (Ill. 1984) .......................................................... 13 n.5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................ 7

*Mallory v. Norfolk S. Ry.*,
   600 U.S. 122 (2023) .......................................................................... 25

*McKenzie v. United States Citizenship & Immigration Services, District Director*,
   761 F.3d 1149 (10th Cir. 2014) ......................................................... 14

*Mohamad v. Palestinian Authority*,
   566 U.S. 449 (2012) ............................................................................ 4

*Mont v. United States*,
   587 U.S. 514 (2019) .......................................................................... 17

*Murphy v. NCAA*,
   584 U.S. 453 (2018) ...................................................................... 12 n.

*Muscarello v. United States*,
   524 U.S. 125 (1998) ............................................................................ 5

*People v. Harvey*,
   250 N.E.3d 265 (Ill. 2024) ........................................................... 8, 12

*People v. Lofton*,
   370 N.E.2d 517 (Ill. 1977) .................................................................. 4

*People v. Tolbert*,
   49 N.E.3d 389 (Ill. 2016) .............................................................. 6, 8

*People v. Webb*,
   131 N.E.3d 93 (Ill. 2019) ......................................................... 4, 8, 16

*Plaut v. Spendthrift Farm*,
    514 U.S. 211 (1995) ........................................................................... 11

*Pool v. City of Houston*,
    978 F.3d 307 (5th Cir. 2020) ............................................................ 10

*Reed v. Goertz*,
    598 U.S. 230 (2023) ................................................................... 19, 20

*Renne v. Geary,*
    501 U.S. 312 (1991) .............................................................. 1, 15, 25

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ............................................................................ 5

*Spokane & I. E. R. Co. v. United States,*
    241 U.S. 344 (1916) ............................................................................ 3

*Thaler v. Vidal,*
    43 F.4th 1207 (Fed. Cir. 2022) .......................................................... 4

*Ward v. Rock Against Racism*,
    491 U. S. 781 (1989) ......................................................................... 13

*Welsh v. Boy Scouts of America*,
    993 F.2d 1267 (7th Cir. 1993) .......................................................... 17

*We the Patriots, Inc. v. Grisham*,
    119 F.4th 1253 (10th Cir. 2024) ........................................................ 1

*Whole Woman's Health v. Jackson*,
    141 S. Ct. 2494 (2021) ..................................................................... 10

*Workman v. UPS*,
    234 F.3d 998 (7th Cir. 2000) ........................................................... 15

## STATUTES & ORDINANCES

70 ILCS 3605/31.................................................................................. 13 n.5

110 ILCS 1020/1..................................................................................... 3 n.2

430 ILCS 66/65...................................................................................... 2, 9

430 ILCS 66/70...................................................................... 11

430 ILCS 66/90................................................................. 13 n.5

720 ILCS 5/24-1 ................................................................ 9, 18

720 ILCS 5/24-2 ...............................................................passim

CTA Ordinance 016-110 ............................................... 13

**OTHER AUTHORITIES**

30 MOORE'S FEDERAL PRACTICE - CIVIL § 811.02.................................... 1 n.1

BLACK'S LAW DICTIONARY (8th ed. 2004)...................................... 5

Jonathan Mitchell, *The Writ-Of-Erasure Fallacy*,
    104 VA. L. REV. 933, 936 (2018) ..................................... 10

## SUPPLEMENTAL ARGUMENT

————————

Schoenthal lacks Article III standing to seek declaratory relief regarding the constitutionality of the Public Transit Statute here, because CTA and Metra both have independent, unchallenged rules that would prohibit them from bringing firearms on their property. That conclusion is supported by not only the Supreme Court's precedent in *Renne v. Geary,* 501 U.S. 312, 316 (1991), but also the overwhelming authority of virtually every court to consider the problem, Burke Br. 12-15 & n.2. That body of authority only grows larger with the passage of time. *E.g.*, *We the Patriots, Inc. v. Grisham*, 119 F.4th 1253, 1259 (10th Cir. 2024) (holding that plaintiffs lacked standing to bring Second Amendment challenge to state law restricting firearms on playgrounds "due to several unchallenged City and County restrictions which appear to limit firearm possession in playgrounds"); *id.* at 1261 ("we are unable to redress injuries caused by the independent actions of third parties — such as the City and the County — that are not before us").[1]

The dispositive jurisdictional inquiry here, then, is whether unchallenged third-party regulations prohibiting Schoenthal from possessing firearms on CTA and Metra trains and property prevent this court from redressing Schoenthal's

————————

[1] Despite representing the plaintiffs on appeal in *We The Patriots*, counsel for Schoenthal failed to acknowledge that decision in their brief or at oral argument. *See Employers Insurance v. United States*, 815 F. Supp. 255, 258 (N.D. Ill. 1993) (noting that duty of candor to tribunal applies to known adverse precedent from other circuits); *accord* 30 MOORE'S FEDERAL PRACTICE - CIVIL § 811.02[4][c]. A decision here conflicting with *We The Patriots* may require circulation to the en banc court under Circuit Rule 40(e).

1

injuries, thus depriving him of Article III standing.  This court's order of July 1, 2025, requested supplemental briefing to address two questions related to this inquiry.  First, how CTA Ordinance 016-110 (hereafter, the "Ordinance") prohibiting firearms on public transit "would operate in the absence of 430 ILCS 66/65(8), as well as any other CTA rule that may prohibit plaintiffs' desired conduct."  Second, "whether the Supreme Court's recent decision in *Gutierrez v. Saenz* . . . affects the redressability analysis" in this case.  Proper resolution of these questions does not change the bottom line here. Schoenthal's injury – his inability to bring firearms on public transit – is not redressable by a declaration as to the Public Transit Statute's constitutionality, depriving him of Article III standing. *Gutierrez* only confirms that fact.  We address these issues, in turn.

## I.   Even Were The Public Transit Statute Unenforceable, The Ordinance Would Prevent Schoenthal From Bringing Arms On CTA Property.

Turning to the first question, the Ordinance would continue to operate precisely as it presently does now, even were this court to hold the Public Transit Statute unconstitutional as applied.  Under Illinois law, the language of the exception to the Ordinance must be construed strictly, and that language allows an individual to carry firearms on CTA property only if section 5/24-2 – which Illinois law *also* requires be construed strictly – authorizes that individual to carry firearms on transit.  But Schoenthal has failed to show that he is an individual section 5/24-2 authorizes to carry firearms on transit.[2]  Rather, all he has shown is that he has a

---

[2] This supplemental brief should not be understood to address plaintiff Joseph Vesel, whose recent employment as a university law enforcement officer makes him

concealed-carry license, but section 5/24-2 only relieves such persons from certain prohibitions in Illinois law; it does not authorize those individuals to carry firearms on public transit. A judicial order holding the Public Transit Statute invalid would not change that fact. Even were that statute unenforceable, section 5/24-2 still would not authorize license-holders to carry firearms on public transit.

### A. The Exception To The Ordinance Only Applies To Individuals Section 5/24-2 Authorizes To Carry Firearms On Transit.

In interpreting the language of the Ordinance, this court must start with the language itself. *Bread PAC v. Federal Election Comm'n*, 455 U.S. 577, 580 (1982). Here, the Ordinance, by its plain terms, states a broad general rule against "[p]ossessing or carrying *any* weapon" on CTA property, followed by an exception for "*individuals authorized* under Section 5/24-2 of the Illinois Criminal Code *to carry weapons onto transit*." (emphases added).

At the outset, the fact that the language here is embodied in an exception to a general prohibition against firearms provides a crucial clue to its intended breadth – as the Supreme Court has long recognized, it is an "elementary rule" of statutory interpretation "that exceptions from a general policy which a law embodies should be strictly construed," lest the exception "destroy" what was "intended to be accomplished by the enactment." *Spokane & I. E. R. Co. v. United States*, 241 U.S. 344, 350 (1916); *accord Commissioner v. Clark,* 489 U.S. 726, 739 (1989) ("In construing [statutes] in which a general statement of policy is qualified by an

---

a "peace officer" allowed to possess a firearm without acquiring a license, mooting his claims here and requiring his dismissal. *See* 7R. 77 (citing 110 ILCS 1020/1).

3

exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). To do otherwise and "extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). Indeed, the Illinois Supreme Court has long held that this very rule requires that section 5/24-2 be read strictly. *People v. Lofton*, 370 N.E.2d 517, 519 (Ill. 1977) (construing security guard exception formerly at section 5/24-2(a)(4), now at section 5/24-2(a)(6)); *accord People v. Webb*, 131 N.E.3d 93, 98 (Ill. 2019) (strictly construing section 5/24-2(a-5) to apply only to "weapons that can be licensed under the Carry Act," and rejecting broader interpretation proposed by Illinois).

Keeping in mind that the exception set forth in the Ordinance must be construed strictly and narrowly in favor of the Ordinance's general prohibition on firearms on CTA property, we now turn to the language of the Ordinance itself. Those terms are undefined, so they are presumed to have their ordinary meaning, such as is found in a dictionary. *E.g.*, *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 453 (7th Cir. 2012). The ordinary meaning of "individuals" is well-settled:

> As a noun, "individual" ordinarily means "a human being, a person." After all, that is how we use the word in everyday parlance. We say "the individual went to the store," "the individual left the room," and "the individual took the car," each time referring unmistakably to a natural person.

*Mohamad v. Palestinian Authority*, 566 U.S. 449, 454 (2012) (cleaned up); *accord Thaler v. Vidal*, 43 F.4th 1207, 1211 (Fed. Cir. 2022) (noting that "common understanding of the word," indicated by the "first definition" in multiple

4

dictionaries, is a "single human being"); BLACK'S LAW DICTIONARY 789 (8th ed. 2004)

("indivisible entity" or "single person").  The word "authorized" is also well-defined:

that term is commonly understood to mean "to endow with authority or effective

legal power, warrant, or right." *E.g.*, *Confederated Salish & Kootenai Tribes v.*

*United States*, 343 F.3d 1193, 1196 (9th Cir. 2003); *accord* BLACK'S LAW DICTIONARY

143 (to "give legal authority" or "to formally approve").  And while "carry" has

multiple meanings, it has a specific, acknowledged meaning of obvious relevance

when discussing firearms on public transit: to "possess and convey (a firearm) in a

vehicle." BLACK'S LAW DICTIONARY 227; *accord Muscarello v. United States*, 524 U.S.

125, 131 (1998) (holding that statutory phrase "carries a firearm" in federal law

"applies to a person who knowingly possesses and conveys firearms in a vehicle . . .

which the person accompanies").  When these terms are put together with the

remaining language of the exception, it becomes clear that the exception applies

only to those particular individuals that section 5/24-2 specifically endows with a

right to possess and convey firearms via transit.

This reading of the Ordinance is reinforced by context, which must also be

considered during statutory interpretation, *Robinson v. Shell Oil Co.*, 519 U.S. 337,

341 (1997) – specifically, the crucial context provided by the language of section

5/24-2 itself.  Reading that section, one immediately finds a lengthy list of various

identified individuals – security guards, police officers, railroad agents, etc. – who

are specifically authorized to carry arms in certain circumstances despite the

general prohibitions on that conduct set forth in certain provisions of the Illinois

criminal statutes on unlawful possession of firearms and unlawful use of firearms.
720 ILCS 5/24-2(a) ("Subsections 24-1(a)(3), 24-1(a)(4), 24-1(a)(10), and 24-1(a)(13)
and [720 ILCS 5/24-1.6] do not apply to or affect any of the following:"); *accord
People v. Tolbert*, 49 N.E.3d 389, 392 (Ill. 2016) (explaining that section 5/24-2
identifies specific "people and conduct that are exempted from provisions of the
aggravated unlawful use of a weapon statute and the unlawful use of weapons
statute"). Indeed, virtually the entirety of section 5/24-2 identifies various
individuals who are authorized to carry firearms in certain circumstances – the sole
exception being a section setting forth the burden of proof in a criminal prosecution.
720 ILCS 5/24-2(h). And when one looks to the various provisions granting those
individuals authority to carry arms, one will immediately see that a number of
those authorizations *involve possession and conveyance of arms via transit* – a few
explicitly, like "[s]pecial agents employed by a railroad . . . to perform police
functions," *id.* 5/24-2(a)(4), and others by necessary implication because they
authorize either the possession of firearms while "commuting" to work, *id.* 5/24-
2(a)(2), (4), (5), (8), (12.5), (13), or possession during the performance of official
duties that extend to public transit, *id.* 5/24-2(a)(1), (c)(1), (c)(3). Others, by
contrast, authorize certain individuals to use firearms only in particular places that
do not even arguably constitute transit, such as certain individuals "while" using
firearms on target ranges, *id.* 5/24-2(b)(1) & (f); and members of certain
organizations "while parading," *id.* 5/24-2(b)(2).

6

**B. Schoenthal Has Not Shown That He Is An Individual Section 5/24-2 Authorizes To Carry Firearms On Transit.**

Having established how the Ordinance functions, the next question, then, is whether Schoenthal has shown that he is one of the individuals authorized by section 5/24-2 to bring firearms on transit. He has not. As the party invoking federal jurisdiction, Schoenthal bears the burden to overcome the presumption against federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992). Thus, it was his burden to come forward with affidavits and evidence setting forth "specific facts," *id.*, showing that section 5/24-2 specifically authorizes him to possess and convey firearms via public transit, thus placing him within the Ordinance's exception. But Schoenthal made no such evidentiary showing below – he did not come forward with evidence, for instance, that he is a warden who desires to carry a weapon while commuting to and from work, 720 ILCS 5/24-2(a)(2), or that he hopes to carry a firearm that is "unloaded and enclosed in a case," *id.* 5/24-2(i). The reason is obvious: such evidence would have been fundamentally irreconcilable with his broad constitutional claim that he desires "to carry loaded, operable handguns on [his] person" *whenever* he utilizes public transit. R. 1 at 3 ¶6.

The only relevant evidence that Schoenthal did present here is that he is licensed to carry a concealed firearm, R. 85 ¶9, but that is not enough to place him within the Ordinance's exception for individuals authorized to possess and convey firearms via transit. That evidence only places him within the part of section 5/24-2 regarding individuals who have "been issued a currently valid license under the Firearm Concealed Carry Act." 720 ILCS 5/24-2(a-5). Yet, that section is still no

7

help to him, because it does not specifically authorize the possession and conveyance of firearms "on transit." As the Illinois Supreme Court has explained, the exemptions set forth in section 5/24-2 only identify specific "people and conduct that are exempted from *provisions* of the aggravated unlawful use of a weapon statute and the unlawful use of weapons statute." *Tolbert*, 49 N.E.3d at 392 (emphasis added). And the only provisions of those criminal statutes from which section 5/24-2(a-5) exempts concealed-carry license-holders – again, keeping in mind that section 5/24-2 must be strictly construed – are "Sections 24-1(a)(4) and 24-1(a)(10)." *Accord People v. Harvey*, 250 N.E.3d 265, 274 (Ill. 2024) (Neville, J., specially concurring) ("In short, section 24-2(a-5) exempts those with a currently valid CCL from punishment under section 24-1(a)(10).").

That limiting language forecloses any reading of section 5/24-2(a-5) to specifically authorize licensed individuals to carry firearms on transit. As noted above, the Illinois Supreme Court has already strictly construed section 5/24-2(a-5) to authorize only the conduct it specifically describes – the possession of licensable weapons, not the possession of any weapon by a person bearing a license. *Webb*, 131 N.E.3d at 98. By the same logic, the remaining language of that section must be strictly construed to authorize only the conduct *with those weapons* that is specifically described in the provisions it references. Crucially, neither of the provisions mentioned in section 5/24-2(a-5) says *anything* about carrying firearms on public transit of any kind. The former only prohibits an individual from carrying firearms anywhere but "his land or in his own abode, legal dwelling, or fixed place

of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission." 720 ILCS 5/24-1(a)(4).  The latter only repeats this language, while also prohibiting possession of weapons "upon any public street, alley, or other public lands within the corporate limits of a city, village, or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons."  *Id.* 5/24-1(a)(10).

Section 5/24-2(a-5) removes these particular prohibitions but, in stark contrast to several other provisions of 5/24-2, does not provide specific authorization for licensed individuals to carry firearms on transit.  By removing the prohibition of section (a)(4), it only authorizes carriage outside a licensed individual's own property or the land or abode of another person with that person's permission, and by removing the prohibition of section (a)(10), it only authorizes licensed individuals' carriage on public streets, alleys, and lands.  Neither specifically authorizes possession and conveyance of firearms on transit – indeed, reading it in that way would put that section in direct conflict with the accompanying language of the Public Transit Statute specifically prohibiting licensees from carrying firearms on public transit. 430 ILCS 66/65(a)(8).  Absent any specific authorization in section 5/24-2 to possess and convey firearms via vehicles on public transit, Schoenthal does not fall within the Ordinance's exception for individuals authorized to carry arms "on transit."

9

**C.     Invalidation Of The Public Transit Statute Would Not Change The Fact That Schoenthal Is Not An Individual Section 5/24-2 Authorizes To Carry Firearms On Transit.**

A judicial order declaring the Public Transit Statute unenforceable would change none of this.  Nor could it – even if a court declares it unconstitutional, the Public Transit Statute would still *exist* and would thus still provide nigh-conclusive contextual evidence that the Illinois legislature did not intend for section 5/24-2(a-5) to authorize recipients of concealed-carry licenses to carry firearms on public transit.  *See*, *e.g.*, *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("federal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves"); *accord Pool v. City of Houston*, 978 F.3d 307, 309 (5th Cir. 2020) ("It is often said that courts 'strike down' laws when ruling them unconstitutional. That's not quite right. Courts hold laws unenforceable; they do not erase them.") (citing Jonathan Mitchell, *The Writ-Of-Erasure Fallacy*, 104 VA. L. REV. 933, 936 (2018) ("The federal courts have no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute. The power of judicial review is more limited: It permits a court to decline to enforce a statute in a particular case or controversy, and it permits a court to enjoin executive officials from taking steps to enforce a statute - though only while the court's injunction remains in effect.") (footnotes omitted)). Indeed, this court has already squarely rejected even the humbler notion that it can erase the erroneous language of opinions by the inferior courts under its supervision.  *Dotson v.*

*Faulkner*, 138 F.4th 1029, 1032 (7th Cir. 2025) (rejecting "Writ of Erasure" as applied to language in district court opinion).[3]

To say otherwise would have troubling Article III implications.  The "primary rule of statutory interpretation is, of course, to give effect to the intention of the legislature," *Rodgers v. United States*, 185 U.S. 83, 86 (1902), but *judicial* invalidation of one part of a body of law does nothing to change the *legislative* intent underlying that body of law; it only restricts how (if at all) that law may be enforced.  For a court to say that its actions on judicial review *alter* the legislative intent underlying a law would be for that court to take on itself the mantle of a legislature, a mantle that Article III's strict limitation of the judicial power to cases and controversies was specifically intended to deny. *Plaut v. Spendthrift Farm*, 514 U.S. 211, 222 (1995).

Setting that fundamental problem of judicial authority aside, invalidation of the Public Transit Statute would not alter the meaning of section 5/24-2, for the simple reason that the statutes are mutually exclusive by design.  The Public Transit Statute is a part of Illinois' Firearm Concealed Carry Act, and sets out a system of penalties for violations of its provisions, 430 ILCS 66/70(d) & (e), that is mutually exclusive of the penalties set forth elsewhere for unlawful possession or aggravated use of a firearm, *id.* 66/70(f) ("A licensee convicted or found guilty of a

---

[3] This explains why, for example, the plaintiffs in *Haaland v. Brackeen* lacked standing to seek a declaration of a federal statute's constitutionality – that declaration would only define the parties' respective rights, but would have no effect whatsoever on non-parties, despite purporting to speak to the facial constitutionality of a federal statute. 599 U.S. 255, 293-94 (2023).

violation of this Act who has a valid license and is otherwise eligible to carry a concealed firearm shall only be subject to the penalties under this Section and shall not be subject to the penalties under Section 21-6, paragraph (4), (8), or (10) of subsection (a) of Section 24-1, or subparagraph (A-5) or (B-5) of paragraph (3) of subsection (a) of Section 24-1.6 of the Criminal Code of 2012.").  Indeed, the Illinois Supreme Court has held exactly as much. *Harvey*, 250 N.E.3d at 269 ("the *only* individuals who could potentially face liability under section 24-1(a)(10) of the UUW statute are those persons who do *not* have a valid CCL"). Invalidating the Public Transit Statute would thus only make unenforceable against Schoenthal the Concealed Carry Act's prohibition on bringing firearms on publicly funded transit; it would have no effect on the meaning of any other section of Illinois law, such as the language of section 5/24-2.  And it would most certainly not transform the language of 5/24-2(a-5), an entirely separate statutory provision saying literally nothing about allowing possession and conveyance of firearms on public transit, into the express authorization the Ordinance requires before a firearm may be brought onto CTA property.[4]

---

[4]  We note that nothing in *Murphy v. NCAA*, 584 U.S. 453 (2018), is to the contrary. While that case recognizes that a *legislative* repeal of an existing prohibition on certain conduct can be considered an authorization of that conduct, *id.* at 467, it should go without saying that this court is not a legislature, and that it lacks power to repeal statutes, *cf. INS v. Chadha*, 462 U.S. 919, 954 (1983) ("Amendment and repeal of statutes . . . must conform with Art. I.").  Moreover, even had the Illinois legislature outright repealed the Public Transit Statute, that would mean *at most* only that the *Concealed Carry Statute* authorizes carriage on public transit – but that is irrelevant under the Ordinance, which asks whether *section 5/24-2* specifically authorizes such carry.  It does not now, nor would it even were the Public Transit Statute to be deemed unenforceable.

Finally, it must be remembered that the CTA – though not a party to this litigation and, thus, not bound by any judgment here – has filed an amicus brief making clear that it interprets its Ordinance to prohibit Schoenthal from bringing firearms onto its property even if the Public Transit Statute is rendered unenforceable.  *E.g.*, CTA Amicus Br. 7 ("even under the district court's order [declaring the Public Transit Statute unconstitutional as applied], plaintiffs cannot carry their firearms for self-defense on public transportation without potential prosecution").  As the Supreme Court has explained, the "interpretation and implementation" of a local law by the local government body that enacted and enforces it is "highly relevant" to a court's interpretation of that law.  *Ward v. Rock Against Racism*, 491 U. S. 781, 795-96 (1989). And while it is undisputed here that violations of the Ordinance may be prosecuted as a criminal trespass under Illinois law, that Ordinance is also enforced by the CTA itself, as a basis for immediately removing violators from its property.  CTA Ordinance 016-110, Sec. 3.  That the CTA understands its Ordinance to bar Schoenthal from possessing firearms on his property regardless of the Public Transit Statute's enforceability thus weighs significantly in favor of the interpretation set forth above.[5]

---

[5]  The proposition that municipal laws "must be in harmony with the general laws of the State . . . .  In case of a conflict the ordinance must give way," *Chicago v. Union Ice Cream Mfg. Co.*, 96 N.E. 872, 873 (Ill. 1911), has no bearing here. First, *Union Ice Cream* derived that proposition from the notion that "[l]ocal laws and regulations are at all times subject to the paramount authority of the [Illinois] legislature." *Id.*  But Illinois law has changed drastically in the century since, with the intervening adoption of the 1970 Illinois Constitution. *Kalodimos v. Morton Grove*, 470 N.E.2d 266, 274 (Ill. 1984). Second, the Ordinance was not passed by a municipality, but the Chicago Transit Board, which has broad "power to pass all

**D.    Any Belated Arguments In Favor Of Standing Here Are Waived, Forfeited, And Meritless.**

While Schoenthal likely sees things differently, he runs into a fundamental, threshold problem here: he did not address the meaning of the Ordinance *at all* in his arguments to this court or below.  Nor has he ever disputed at any point of these proceedings that CTA would continue to prohibit firearms on its property if the Public Transit Statute is set aside.  Rather, he has simply accepted that CTA and Metra "have policies that also prohibit carrying firearms on public transportation," Schoenthal Br. 6; *accord* R. 87 at 2 ("the operators of various transit systems have their own policies against carry"), and offered a baseless argument that invalidation of the Public Transit Statute enacted by Illinois would automatically invalidate the separate rules enacted by non-parties CTA and Metra, Schoenthal Br. 12; *see id.* at 13; *contra* Burke Reply 6-7 (explaining that this argument fundamentally misunderstands redressability, as shown by *Haaland*).  That is significant because, while an argument *against* standing cannot be waived, "[a]rguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Center for Biological Diversity v. United States EPA*, 937 F.3d 533, 542 (5th Cir. 2019) (collecting authority); *accord*, *e.g.*, *McKenzie v. United States Citizenship & Immigration Services, District Director*, 761 F.3d 1149, 1155 (10th Cir. 2014). There

---

ordinances and make all rules and regulations proper or necessary to regulate the use, operation and maintenance of its property and facilities." 70 ILCS 3605/31. 430 ILCS 66/90, preempting preexisting regulation and regulation by home-rule municipalities in the manner required by the 1970 Constitution, is thus irrelevant as well.

exists a presumption against federal jurisdiction absent affirmative indication to the contrary. *Renne*, 501 U.S. at 316.

A finding of forfeiture is particularly appropriate here, for three reasons. First, while the proper interpretation of the Ordinance is an underlying predicate to this court's jurisdiction, it is settled that arguments regarding the predicates to jurisdiction may be forfeited even when their jurisdictional effects may not. *E.g.*, *Workman v. UPS*, 234 F.3d 998, 1000 (7th Cir. 2000). Second, a finding of waiver here would be particularly appropriate because – while we are confident in our interpretation of the Ordinance and Illinois law – the interplay between the two is a matter of first impression in any court, and the federal courts have recognized that it is "unwise to rule on a state law issue of first impression when the resolution of a case does not require it." *Darensburg v. Metropolitan Transportation Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011). Third, the core due process principle at the heart of this court's forfeiture jurisprudence is that a litigant suffers serious prejudice when a court considers an argument without affording a fair opportunity to respond. *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). And there will be significant prejudice here if Schoenthal is allowed to argue, for the first time in this dispute, that invalidation of the Public Transit Statute will allow him to bring firearms on public transit despite the CTA rules to the contrary. After all, it is entirely possible that Schoenthal will focus on aspects of section 5/24-2 or Illinois law that we simply failed to anticipate. In the normal progression of things, such

new arguments could be addressed via a reply brief or at oral argument.  But given the advanced state of the proceedings, that may not be possible here.

That said, Defendant Burke responds to what she anticipates will be Schoenthal's most likely argument: that the exception to the Ordinance allows individuals to bring on CTA trains whatever firearms they are allowed to lawfully possess under section 5/24-2.  As a result, he will presumably say, because section 5/24-2(a-5) provides all concealed-carry license-holders the authorization to carry certain firearms, those license-holders would also be authorized to carry those arms on CTA property if the Public Transit Statute is unenforceable.  In making that argument, Schoenthal would ignore that both the exception to the Ordinance *and* section 5/24-2 must be strictly construed, and would effectively ask that they be read as broadly as possible, to allow all individuals to bring firearms on CTA trains and property so long as section 5/24-2 authorizes them to possess those firearms.

That reading should be rejected.  Most obviously, acceptance of such an argument would directly contradict the Illinois Supreme Court's instruction that section 5/24-2(a-5) may not be read to authorize conduct other than what its language specifically identifies. *Webb*, 131 N.E.3d at 98.  Furthermore, had the CTA intended to grant such broad permission to bring firearms on public transit, it would have simply exempted from the general prohibition on weapons on its property all "individuals authorized under Section 5/24-2 of the Illinois Criminal

16

Code *to carry weapons*" or "*to possess weapons*."[6]  But the CTA chose to include the additional narrowing language "onto transit," and it is a fundamental canon of construction that this language cannot be read in such a manner as to make it superfluous. *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1272 (7th Cir. 1993). Rather, this court must give such narrowing language full effect, just as it must give broadening language full effect. *Mont v. United States*, 587 U.S. 514, 522 (2019). And when the exception to the Ordinance is strictly construed, with its narrowing language given its full effect, it must be read to allow firearms on CTA property only when the language of section 5/24-2 affirmatively authorizes such weapons to be carried onto transit.  To read it otherwise would allow the exception to the Ordinance's broad prohibition on firearms to swallow virtually that entire prohibition – the exact destructive result the canon of strict construction was meant to avoid.  *Spokane & I. E. R. Co.*, 241 U.S. at 350.

Schoenthal's broad reading of the Ordinance would also have patently absurd results, which must be avoided whenever, as here, alternative interpretations consistent with legislative intent make it possible to do so. *Griffin v. Oceanic Contractors*, 458 U.S. 564, 575 (1982).  Most obviously, section 5/24-2 authorizes certain individuals to possess machine guns "within the lawful scope of a licensed manufacturing business," 720 ILCS 5/24-2(c)(5), but a broad reading of the

---

[6]  Or, more likely, the CTA would have not drafted the Ordinance with a broad prohibition on firearms and a near-equally broad exception to that prohibition in the first place, but rather would simply have set forth a narrow prohibition on firearms by individuals not authorized by section 5/24-2 to possess those firearms.

exception to the Ordinance would mean that those individuals – by virtue of being authorized to possess machine guns in certain identified circumstances – are thus *also* authorized to bring those machine guns on public transit.  Also, individuals who collect "military ordnance," 720 ILCS 5/24-2(g)(2), are permitted to possess "explosive bullets," defined as bullets carrying "an explosive charge which will explode upon contact with the flesh of a human," 720 ILCS 5/24-1(a)(11). To read the Ordinance broadly, to allow individuals to bring on public transit everything they may lawfully possess, would thus effectively say that the CTA was troubled enough by the prospect of firearms on its trains that it enacted a general prohibition on *all* firearms, but was nevertheless unbothered by the prospect of *machine guns and explosive bullets* in the confined interiors of CTA buses or trains (whether still or in motion).  This example alone crystalizes the logical flaw in this potential legal interpretation.  Equally absurd, a broadly interpreted exception to the Ordinance would allow those individuals with only extremely limited authorization to possess firearms "while" practicing on a shooting range, 720 ILCS 5/24-2(b)(1) & (f), to bring those arms onto CTA property, despite the strictly limited nature of that authorization making it impossible to legally transport those firearms on the public streets surrounding CTA property.  These absurdities all counsel strongly against a broad interpretation of the exception to the Ordinance.

In sum, section 5/24-2 nowhere specifically authorizes Schoenthal to carry firearms on public transit, as is required to fall within the exception to the Ordinance.  Invalidation of the Public Transit Statute would do absolutely nothing

to change this fact, but rather would only remove one separate statutory prohibition on his desired conduct. And absent statutory authorization to bring firearms on transit, Schoenthal may not bring firearms on the CTA, preventing redress under the host of cases discussed in our opening and reply briefs, and requiring dismissal for lack of jurisdiction.

## II.    *Gutierrez* Only Undermines Schoenthal's Standing Here.

This court also requested briefing on whether the Supreme Court's recent decision in *Gutierrez v. Saenz*, No. 23-7809, 2025 U.S. LEXIS 2495 (June 26, 2025), has any effect on the redressability analysis. The only effect that *Gutierrez* has here is to confirm that Schoenthal's injuries are not redressable in this suit because even complete success on his claims would still not allow him to engage in his desired conduct affected with a constitutional interest without fear of prosecution.

To understand *Gutierrez*, it is necessary to start with a discussion of the Court's preceding decision in *Reed v. Goertz*, 598 U.S. 230 (2023), which was central to the standing analysis in *Gutierrez*. In *Reed*, the plaintiff – a criminal defendant facing a death sentence for murder – sought DNA testing of certain evidence under Texas' post-conviction DNA testing law, but the prosecutor refused to test most of the evidence he requested. *Id.* at 233. After the state trial court denied the plaintiff's motion for an order to test that evidence, he sued the prosecutor under section 1983, alleging that Texas' DNA testing statute violated his right to procedural due process. *Id.* The district court dismissed his complaint as untimely, and the Fifth Circuit affirmed. *Id.* On review of that decision in the Supreme Court,

19

the prosecutor argued that the plaintiff lacked standing to bring his suit, but the Court summarily dismissed that notion – as the Court explained, the plaintiff had "sufficiently alleged an injury in fact: denial of access to the requested evidence," and a judgment that the DNA testing statute violated due process "would eliminate the state prosecutor's justification for denying DNA testing," making it significantly more likely "that the state prosecutor would grant access to the requested evidence." *Id.*

Subsequently, in *Gutierrez*, the plaintiff – another criminal defendant facing a death sentence for murder – sought DNA testing of evidence in order to prove his innocence, but "the district attorney who has custody of the evidence" refused to release it. 2025 U.S. LEXIS 2495 at *12. Gutierrez then filed suit under section 1983 "seeking declaratory and injunctive relief," alleging that the denial of access to this evidence violated his liberty interest in the use of state procedures to prove his innocence. *Id.* at *12-*13. Specifically, he alleged that the relevant state law was unconstitutional in multiple respects. *Id.* at *13. The district court ruled only partially in his favor by entering a declaratory judgment, however, and on appeal the Fifth Circuit held that the plaintiff lacked standing to even bring his lawsuit "because the declaratory judgment [he ultimately received] would be unlikely to cause the prosecutor to 'reverse course and allow testing.'" *Id.* at *13-*14.

The Supreme Court reversed, explaining that the Fifth Circuit's ruling "contravenes" *Reed*'s holding that a plaintiff has "standing to sue the local prosecutor who denied him access to DNA testing" when success on his

constitutional claim would eliminate the prosecutor's reason for denying him that access. 2025 U.S. LEXIS 2495 at *7-*8. At the outset of its analysis, the Court noted that its precedent already established that prisoners have a constitutional liberty interest in demonstrating their innocence with new evidence, and that a prosecutor's refusal to release evidence for that purpose was thus actionable in due process. *Id.* at *15-*16. Furthermore, the Court noted that *Reed* had already held that a prosecutor's denial of access to DNA evidence is redressable by a judgment that would eliminate the proffered reason for denying that access. *Id.* at *17. "The same is true of Gutierrez's suit," the Court explained, because the prosecutor had denied him access to his requested evidence and the relief sought would eliminate the justification for denying that access. *Id.* at *17-*18.

In concluding to the contrary, the Court went on to explain, the Fifth Circuit made a number of analytical errors. First, in holding that Gutierrez lacked standing to even *bring* his suit, the Fifth Circuit improperly focused on the limited relief he ultimately *received*, and "gloss[ed] over the substance of Gutierrez's complaint, which is the proper focus of the standing inquiry" when addressing Gutierrez's standing to bring his suit. 2025 U.S. LEXIS 2495 at *18-*19. That was error, the Court explained, because standing to sue depends on the relief requested, not "the relief the District Court granted on the merits." *Id.* at *19-*20. Turning to that requested relief, it was noteworthy that "Gutierrez challenged, in his complaint, *each* of the roadblocks Article 64 placed between himself and DNA testing." *Id.* at *20 (emphasis added). That he ultimately received less relief than

21

he sought did not "retroactively depriv[e] the District Court of jurisdiction over Gutierrez's complaint, as the Fifth Circuit erroneously held." *Id.*

Second, the Court explained, "the Fifth Circuit erred in transforming the redressability inquiry into a guess as to whether a favorable court decision will in fact ultimately cause the prosecutor to turn over the evidence." 2025 U.S. LEXIS 2495 at *20. While the Texas *courts* had offered multiple reasons to deny the plaintiff's request for DNA testing, the same was true in *Reed*, which nevertheless held that an order invalidating Texas' DNA testing statute would redress his injury by eliminating "the state *prosecutor's*" reliance on the DNA testing statute as his proffered reason to deny access to that evidence. *Id.* at *21-*22 (emphasis added). Indeed, it could not be seriously doubted that the DNA testing statute factored into the prosecutor's decision, given that he admitted at oral argument that he would likely turn over that evidence if he thought the testing statute allowed it. *Id.* at *22. The requested relief invalidating that statute "would accordingly redress [Gutierrez'] injury by removing the allegedly unconstitutional barrier [that statute] erected between Gutierrez and the requested testing." *Id.*

Finally, it was irrelevant that the prosecutor claimed that he would not ultimately turn over the requested evidence even if the sought-after declaratory judgment had been granted. 2025 U.S. LEXIS 2495 at *22. As the Court explained, the fact that a prosecutor "might eventually find *another* reason, grounded in Article 64 or elsewhere, to deny a prisoner's request for DNA testing does not vitiate his standing to argue that the *cited* reasons violated his rights." *Id.* at *23

22

(emphases added).  In support of this conclusion, the Court noted that individuals affected by a government decision have standing to challenge the stated reason for that decision, even if the government "might later . . . reach the same result for a different reason." *Id.* (cleaned up).

Properly understood, *Gutierrez* only confirms that Schoenthal lacks standing here.[7]  As explained in our briefs, the redressability analysis focuses on the effect of the requested judicial relief on the plaintiff's ability to engage in desired conduct affected with a constitutional interest.  Burke Br. 17; Burke Reply 5. Unsurprisingly, then, *Gutierrez* literally began its analysis by identifying the specific conduct affected by a constitutional interest at issue: the testing of DNA evidence. 2025 U.S. LEXIS 2495 at *15-*16.  And in determining whether that injury was redressable, the Court expressly rejected the notion – advanced by Schoenthal here, Schoenthal Br. 14-15 – that the specific relief ultimately granted by the district court could be determinative of the plaintiff's standing, 2025 U.S. LEXIS 2495  at *18-*20. Rather, the Court focused on whether the relief the plaintiff *requested in his complaint*, if granted, would likely redress that injury. *Id.* And in answering that question in the affirmative, the Court relied on a fact that

---

[7] Notably, the plaintiff in *Gutierrez* sought "declaratory and injunctive relief" in his complaint, 2025 U.S. LEXIS 2495 at *12, but, unlike Schoenthal, actually pursued that injunctive relief to judgment, *see Gutierrez v. Saenz*, No. 1:19-cv-00185, Doc. 48 at 11 (N.D. Tex. June 2, 2020) (denying injunctive relief under *Rooker-Feldman*). *Gutierrez* thus did not involve a freestanding request for injunctive relief, so it cannot be read to contradict the rule of *California v. Texas* that a request for a declaration of a statute's unconstitutionality cannot, standing alone, sustain Article III jurisdiction. 593 U.S. 659, 672 (2021).

starkly distinguishes the plaintiff in that case from Schoenthal: where Schoenthal has conspicuously failed to challenge the constitutionality of the independent CTA and Metra rules prohibiting his desired conduct, the plaintiff in *Gutierrez* expressly challenged "*each*" of the statutory obstacles to his desired relief.  *Id.* at *20 (emphasis added).

While Schoenthal will likely latch onto the statement in *Gutierrez* that the plaintiff's standing could not be defeated by the prosecutor's claim that he would deny access to the desired evidence even if the DNA statute were invalidated, 2025 U.S. LEXIS 2495 at *22, that reliance would be misplaced.  All the Court said is that the prosecutor could not defeat standing to challenge a prosecutorial decision resting solely on one cited ground by claiming that, if that ground is invalidated, he might be able to come up with a new, previously undisclosed reason to make that same decision.  Indeed, this portion of *Gutierrez* specifically relied on precedent holding that a plaintiff has standing to challenge government action in such circumstances, despite the possibility that new grounds for that same action might later be identified.  *Id.* at *23. But those are not the circumstances of *this* case – we do not argue that new, previously undisclosed (or unenacted) ordinances or rules might prohibit Schoenthal's desired conduct even if the Public Transit Statute is declared unconstitutional. Rather, we merely note that the CTA has had in place *since 2016* a rule specifically prohibiting Schoenthal's desired conduct here; it should go without saying that immediately invoking a decade-old rule as a potential

ground for prosecution is a far cry from the sort of post hoc justification that
*Gutierrez* held cannot defeat standing.

Moreover, treating *Gutierrez* as controlling here would ignore that the
Supreme Court already recognized in *Renne* that redressability is called into serious
question when an unchallenged law independently prohibits the plaintiff's desired
conduct. 501 U.S. at 316.  *Gutierrez* did not even cite *Renne*, let alone call into doubt
the conclusion about its meaning that forms the basis of the vast body of precedent
rejecting standing in the circumstances presented here. Burke Br. 13-15 & n.2.
That is dispositive because the reasoning of *Renne* is directly applicable, and the
Supreme Court has made clear that when one of its decisions directly on point rests
on grounds that a lower court thinks inconsistent with the Court's subsequent
precedent, the lower court is to apply the precedent directly on point and leave it to
the Court to overrule that decision if and when it deems fit.  *Mallory v. Norfolk S.
Ry.*, 600 U.S. 122, 136 (2023). That rule applies with particular force in the
jurisdictional context.  *E.g.*, *Hohn v. United States*, 524 U.S. 236, 252 (1998)
(rejecting notion that "opinions passing on jurisdictional issues *sub silentio* may be
said to have overruled an opinion addressing the issue directly").  If the Supreme
Court thinks *Renne* is wrongly decided or has spawned a decades-long
misunderstanding of redressability, that is a matter for the Court to address if  it
deems it appropriate – until then, *Renne* and the uniform body of precedent
interpreting it to foreclose redressability in circumstances such as here must be
followed.

## CONCLUSION

———————

The judgment should be vacated and remanded with instructions to dismiss for lack of jurisdiction.  If not, the judgment should be reversed and remanded with instructions to enter judgment for the defendants.

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

BY:    /s Jonathon D. Byrer
Jessica M. Scheller
Jonathon D. Byrer
Prathima Yeddanapudi
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4366
jonathon.byrer@cookcountysao.org

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

—————————————

     In accordance with Fed. R. App. P. 32(g), I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i), as modified by Circuit Rule 32(c), because it contains 7,000 words, beginning with the words "Supplemental Argument" on page 1 and ending with the words "Respectfully submitted" on page 26. In preparing this certificate, I relied on the word count of the word-processing system used to prepare the brief, which was Microsoft Word.

s/ Jonathon D. Byrer
Jonathon D. Byrer, Attorney

**CERTIFICATE OF SERVICE**

—————————————

     I certify that on July 11, 2025, I electronically filed the attached Supplemental Brief of Defendant-Appellant Eileen O'Neill Burke with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Jonathon D. Byrer
Jonathon D. Byrer, Attorney
