No. 24-2643, 24-2644 (consol.)

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

BENJAMIN SCHOENTHAL, et al.,

*Plaintiffs-Appellees,*

v.

KWAME RAOUL, in his official capacity
as Attorney General of Illinois, et al.,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS (No. 3:22-cv-50326)
HONORABLE IAN D. JOHNSTON

**SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLEES**

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
Tel: (630) 452-4547
Fax: (630) 596-4445
dsigale@sigalelaw.com

David H. Thompson
*Counsel of Record*
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES....................................................................... ii

INTRODUCTION ..................................................................................... 1

ARGUMENT .............................................................................................. 3

    I.    The Chicago Transit Authority Allows Licensed Concealed Carriers to Bring Their Firearms onto Buses and Trains.......... 3

    II.   *Gutierrez v. Saenz* Confirms that Plaintiffs' Injuries are Constitutionally Redressable...................................................... 8

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979) ................................................................ 1, 2

*Chi. Transit Auth. v. Danaher*,
    40 Ill. App. 3d 913 (Ill. App. 1st Dist. 1976) ................................... 6

*Easterday v. Village of Deerfield*,
    176 N.E.3d 187 (Ill. App. Ct. 2020) ................................................ 7

*Gutierrez v. Saenz*, 606 U.S. ---,
    No. 23-7809, 2025 WL 1758506
    (U.S. June 26, 2025) ................. 2, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ........................................................... 14, 15, 16

*Larson v. Valente*,
    456 U.S. 228 (1982) ........................................................ 5, 6, 10, 11

*Lujan v. Defs. of Wildlife*,
    504 U. S. 555 (1992) ...................................................................... 10

*Maldonado v. Morales*,
    556 F.3d 1037 (9th Cir. 2009) ..................................................... 2, 14

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ............................................................... 15, 16

*Reed v. Goertz*,
    598 U.S. 230 (2023) ..................................................................... 9, 11

*Renne v. Geary*,
    501 U.S. 312 (1991) ...................................................................... 14

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993) ........................................................................ 3

**Statutes**

CTA Ordinance No. 016-110 § 1(28) ................................................. 3, 4, 5

430 ILCS
    66/65(a)(8) ...................................................................................... 11

66/90 ................................................................................. 1, 6, 7

66/999 ..................................................................................... 7

55 ILCS 5/3-9005(a)(1) ............................................................. 15

625 ILCS 51-217 ........................................................................ 4

720 ILCS

5/24-2(a-5) ........................................................................ 1, 4, 5

5/24(a)(4) ................................................................................ 4

## Other Authorities

R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, HART AND WECHSLER'S
THE FEDERAL COURTS AND THE FEDERAL SYSTEM (7th ed. 2015)... 12

## INTRODUCTION

Both of the authorities identified in the Court's supplemental-briefing order strongly confirm that Plaintiffs have standing to challenge the Illinois Public Transit Ban. First, although Chicago Transit Authority (CTA) Ordinance No. 016-110 § 1(28) generally bans weapons from buses and trains, it explicitly exempts from this blanket ban individuals authorized under 720 ILCS 5/24-2 to carry weapons on transit. And individuals with a valid concealed-carry license are authorized under section 5/24-2 to do exactly that. *See* 720 ILCS 5/24-2(a-5). Even if the CTA Ordinance *did* ban possession of handguns by concealed-carry license holders, it would still be unenforceable because any such application is preempted by state law. *See* 430 ILCS 66/90. Without the Illinois Public Transit Ban, there would be no valid law, ordinance, or regulation prohibiting Plaintiffs from carrying their concealed firearms on CTA buses and trains. Their injury is thus redressable by declaring the enforcement of that law unconstitutional.

Even if another law, ordinance, or regulation did prohibit possession of firearms on public transit, those rules would not create a redressability problem in this case. The injury suffered by Plaintiffs is a

potential prosecution under the Illinois Public Transit Ban. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). If the district court's order declaring enforcement of the Public Transit Ban unlawful is affirmed, Plaintiffs will not face a criminal enforcement action under that statute. And the declaratory judgment will also substantially increase the likelihood that Plaintiffs will ultimately be able to possess firearms on public transportation regardless of any rules to the contrary by the individual public transit agencies.  The same Defendant that would prosecute violations of the Public Transit Ban also prosecutes violations of the criminal trespass statute through which those transit rules would be enforced. The collateral-estoppel effect of the judgment in this case would preclude Defendant Burke from relitigating Plaintiffs' right to carry firearms on public transit in a future trespass suit. *Cf. Maldonado v. Morales*, 556 F.3d 1037, 1043 (9th Cir. 2009).

The Supreme Court's recent decision in *Gutierrez v. Saenz*, 606 U.S. --- No. 23-7809, 2025 WL 1758506 (U.S. June 26, 2025), confirms these conclusions. That case reiterated that an injury is redressable if the court can remove one of the "unconstitutional barrier[s]" that exists between a plaintiff and his desired relief. *Id.* at *7. The Public Transit Ban presents

one such barrier here and Plaintiffs thus have standing as confirmed by *Gutierrez*'s clear holding.

## ARGUMENT

## I.   The Chicago Transit Authority Allows Licensed Concealed Carriers to Bring Their Firearms onto Buses and Trains.

A.   This Court has requested that Plaintiffs "address how [CTA] Ordinance 016-110 would operate in the absence of 430 ILCS 66/65(8)." Suppl. Br. Order, Doc. 81 at 1 (July 1, 2025). In the absence of 430 ILCS 66/65(8) (the "Public Transit Ban"), Ordinance 016-110 would permit Plaintiffs to carry their concealed weapons on CTA buses and trains.

Chicago Transit Authority Ordinance No. 016-110 § 1(28) prohibits "[p]ossessing or carrying any weapon" on CTA buses and trains, "including . . . guns." But this ordinance contains a critical exception: it allows "those individuals authorized under Section 5/24-2 of the Illinois Criminal Code to carry weapons onto transit." *Id.*[1] Thus, if a person is authorized to carry firearms on transit facilities as a matter of state law

---

[1] While none of the parties previously identified this exception to Ordinance No. 016-110 § 1(28), the Court is free to consider it, especially as the scope of the ordinance is a purely legal question. *See U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (ruling that courts can address purely legal arguments after supplemental briefing).

under Section 5/24-2, CTA Ordinance No. 016-110 § 1(28) also permits him to carry firearms on CTA buses and trains as a matter of CTA's own regulations.

The pivotal question then becomes whom Section 5/24-2 authorizes to carry concealed weapons on buses and trains. Section 5/24-2 creates certain exceptions to Section 5/24-1's prohibition of the "unlawful use of weapons." Because that prohibition extends to unlawfully "[c]arr[ying] or possess[ing]" a firearm "in any vehicle," 720 ILCS 5/24-1(a)(4), and because Illinois law defines "vehicle" to include both trains and buses, *see* 625 ILCS 5/1-217 (defining "vehicle" to include "devices" that are able to operate on a "highway" and "devices used exclusively upon stationary rails or tracks"), Section 5/24-2's exceptions to that prohibition effectively, in the phrasing of the CTA's Ordinance, "authorize[ ]" anyone who falls within one of the exceptions "to carry weapons onto transit." CTA Ordinance No. 016-110 § 1(28). And one of Section 5/24-2's exceptions extends to "any person carrying a concealed pistol, revolver, or handgun" if "the person has been issued a currently valid license under the Firearm Concealed Carry Act at the time of the commission of the offense." 720 ILCS 5/24-2(a-5). Section 5/24-2 thus, in effect, authorizes

concealed-carry license holders to carry concealed firearms on transit facilities—and Chicago Transit Authority Ordinance No. 016-110 § 1(28)'s prohibition thus, by its own terms, does not apply to those license holders.

Although the regulatory scheme here involves multiple statutes and ordinances, it thus ends up functioning in a relatively simple manner. The relevant CTA Ordinance presumptively bans all weapons but incorporates the exceptions listed in 720 ILCS 5/24-2. And one of Section 5/24-2's exceptions covers those persons who possess a valid concealed-carry license. *Id.* 5/24-2(a-5). Because each of the Plaintiffs in this case possesses a valid concealed-carry license, Pls.' Statement of Undisputed Facts, Dist. Ct. Doc.  71 ¶¶ 9, 17, 25, 33 (Jan. 29, 2024), they each fall into the exception enumerated in Section 5.24-2(a-5), and they each are accordingly exempt from the CTA Ordinance generally prohibiting the possession of firearms on CTA buses and trains. CTA Ordinance No. 016-110 § 1(28). The district court judgment declaring 430 ILCS 66/65(8) unconstitutional—the only state-law obstacle preventing Plaintiffs from carrying firearms on public transit—thus clears the way for them to carry their firearms on vehicles operated by the CTA. That is

more than enough to establish Plaintiffs' standing. *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (a Plaintiff "need not show that a favorable decision will relieve his *every* injury" to have standing).

B.    CTA Ordinance No. 016-110 § 1(28) cannot be enforced against Plaintiffs for an additional reason: to the extent it did bar carry licensees from carrying on public transit, it would be preempted by state law. Section 90 of the Illinois Concealed Carry Act declares that "[t]he regulation, licensing, possession, registration, and transportation of handguns and ammunition for handguns by licensees are exclusive powers and functions of the State." 430 ILCS 66/90. CTA's amicus brief expressly admits that it is not the State but rather "is a 'unit of local government' under the Illinois Constitution." CTA Amicus Br., Doc. 45 at 8 (Jan. 24, 2025) (quoting Ill. Const. 1970, art. VII, § 1); *see also Chi. Transit Auth. v. Danaher*, 40 Ill. App. 3d 913, 917 (Ill. App. 1st Dist. 1976) (holding that the CTA is a "special district" and thus a "unit of local government" under Article VII, § 1). Accordingly, CTA wholly lacks any power to regulate the possession or transportation of handguns by persons who possess a concealed-carry license. 430 ILCS 66/90.

To be sure, Section 90 creates an exception to its ban on local regulation of firearms for regulations and ordinances "enacted on or before the effective date of this Act" that are not "inconsistent with" the Act. *Id.* But Ordinance No. 016-110 § 1(28) was enacted in 2016, and the Illinois Concealed Carry Act went into effect on July 9, 2013. *See* 430 ILCS 66/999; *see also Easterday v. Village of Deerfield*, 176 N.E.3d 187, 190 (Ill. App. Ct. 2020). And in any event, if Plaintiffs are correct that the Illinois Public Transit Ban—which is part of the Concealed Carry Act— is unenforceable, then the CTA Ordinance 016-110 would be "inconsistent with" the Concealed Carry Act, since the latter (absent the challenged Ban) would *allow* firearms on buses trains and the former would *prohibit* them. *See Easterday*, 176 N.E.3d at 201 (explaining that a "regulation is 'inconsistent with' the Act where such regulation imposes greater restrictions on . . . weapons than the Act imposes"). The clear intent of the Concealed Carry Act's preemption provision is to eliminate a local patchwork of laws governing where concealed-carry license holders can carry, and allowing a CTA ordinance to restrict carry on public transit when no valid state law does so would be manifestly inconsistent with the Illinois's General Assembly's legislative design.

7

## II.  *Gutierrez v. Saenz* Confirms that Plaintiffs' Injuries are Constitutionally Redressable.

Even if public-transit systems *did* ban individuals with concealed-carry licenses from bringing weapons onboard their buses and trains, Plaintiffs' injury would still be redressed by a favorable ruling in this case, for all the reasons explained in Plaintiffs' prior briefing and at oral argument. The Supreme Court's recent decision in *Gutierrez v. Saenz*, 606 U.S. ---, No. 23-7809, 2025 WL 1758506 (U.S. June 26, 2025), removes any doubt about this conclusion.

A.    In *Gutierrez*, the Supreme Court considered whether a death-row inmate had standing to bring a due-process challenge to Texas's procedures for obtaining DNA evidence in the possession of prosecutors. According to Gutierrez, if he could access the evidence, then he could use that evidence to prove that he was not eligible for the death penalty under Texas law. *Id.* at *4. The district court agreed that Texas's procedure violated due process by "preclud[ing] [prisoners] from obtaining DNA testing . . . unless they can establish innocence of the underlying crime." *Id.* at *5. The prosecutor in possession of the relevant DNA evidence, however, had given multiple reasons for refusing to turn over the DNA evidence, some of which had nothing to do with this feature of the state-

law procedure. For example, the prosecutor maintained that the Texas courts had previously concluded Gutierrez made his request for the purpose of delay, which also relieved the prosecutor of having to allow the testing under state law.

The Supreme Court rejected the argument that the prosecutor's alternative reasons for denying the testing robbed Gutierrez of constitutional redressability. *Id.* at *8; *see also Reed v. Goertz*, 598 U.S. 230, 234 (2023). The Court acknowledged that the "prosecutor might eventually find another reason, grounded in [the challenged statute] or elsewhere, to deny a prisoner's request for DNA testing." *Gutierrez*, 2025 WL 1758506, at *8. But the fact that some alternative obstacle might ultimately prevent Gutierrez from obtaining the DNA evidence "d[id] not vitiate his standing." *Id.* The declaratory judgment he sought removed one legal impediment to his ultimate goal, the Court explained, and that was sufficient redress to allow him to sue. "A declaratory judgment in Gutierrez's favor would . . . redress his injury by removing the allegedly unconstitutional barrier Article 64 erected between Gutierrez and the requested testing." *Id.* at *7.

9

*Gutierrez*'s holding on redressability is not limited to the due-process context. To the contrary, the Court relied on cases from other contexts, such as administrative law, which establish that persons "'adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an improper legal ground . . . even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason.'" *Id.* at *8 (quoting *FEC v. Akins*, 524 U.S. 11, 25 (1998)); *see also Lujan v. Defs. of Wildlife*, 504 U. S. 555, 572 n. 7 (1992) ("[U]nder our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered . . . "). In other words, as Plaintiffs have maintained from the beginning of this case, even if there is no guarantee that a favorable judgment will ultimately *eliminate* their injury, constitutional redressability exists so long as it is "likely" that the plaintiff will receive some relief. *Larson*, 456 U.S. at 243 n.15. That relief can take the form of removing an unlawful reason that the Defendant

10

relied upon for his action; redressability does not demand that a favorable judgment remedy a Plaintiff's "every injury." *Id.*

B.     *Gutierrez* supports Plaintiffs' standing in this case for several reasons. First, *Gutierrez* confirms that Defendants' enforcement of the Public Transit Carry Ban is the specific injury in fact that must be redressed to establish standing. In *Gutierrez*—like in *Reed v. Goertz* before it—the Supreme Court defined the plaintiff's injury in fact as "the local prosecutor's denial of his request." *Gutierrez*, 2025 WL 1758506, at *6; *see also Reed*, 598 U.S. at 234. And *Gutierrez* found redressability because the district court's declaratory judgment "order[ed] a change in the legal status of the parties" by "eliminating the . . . allegedly unlawful justification" for that specific action by the prosecutor. 2025 WL 1758506, at *6 (cleaned up).

Here, Plaintiff's injury in fact is the threat that Defendants would bring a criminal suit enforcing the challenged Public Transit Carry Ban. It is undisputed that Defendants would fully intend to prosecute Plaintiffs under the Public Transit Statute for exercising their Second Amendment rights on public transportation were they to do so absent a judgment to the contrary. 430 ILCS 66/65(a)(8). And the declaratory

judgment entered below conclusively "order[s] a change in the legal status of the parties" by "eliminating" any risk of prosecution under the challenged Ban. *Gutierrez*, 2025 WL 1758506, at *6 (cleaned up). A potential prosecution under the Public Transit Statute is the kind of "discrete injury" that gives plaintiffs standing to sue. *Larson*, 456 U.S. at 243 n.15. That remains the case even if Defendants could still bring a prosecution under a separate statute. That prosecution would create a second, distinct injury.

Imagine a scenario where instead of bringing a pre-enforcement challenge, a concealed-carry licensee elected to exercise his right to violate the statute and test his legal theory in defense of a prosecution. If the prosecutor brought a charge for violating the Public Transit Ban, the gun owner could surely raise a Second Amendment defense to that Ban, even if he alternatively could be charged under some other law. And because a pre-enforcement challenge is simply a way to assert a defense without having to violate the statute first, it follows that Plaintiffs have standing to challenge the Public Transit Ban in this case. *See* R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 994 (7th ed. 2015).

C.     Even if Cook County is correct (which it is not) that the relevant injury here is not the imminent enforcement action that the Plaintiffs face but their "inability to bring firearms on public transit," Cook County Reply Br., Doc. 68 at 1 (May 2, 2025), *Gutierrez* still supports redressability. Indeed, the redressability issue in this appeal closely resembles the one in *Gutierrez*. Gutierrez faced multiple obstacles to obtaining the DNA testing he desired, and the Supreme Court held that removing one of those legal obstacles was enough to establish redressability. So too here: Plaintiffs in this case face two ostensible obstacles, the Public Transit Ban and the ordinance(s) that allegedly prohibit carrying firearms on public transit. And just as in *Gutierrez*, the removal of one of those obstacles would create "a change in [the] legal status" of the parties, establishing redressability. 2025 WL 1758506, at *6 (quotation marks omitted).

If anything, *Gutierrez* involved a more difficult redressability issue than this appeal. The prosecutor's disparate justifications for his refusal to turn over the DNA evidence Gutierrez requested bore little relation to each other. Accordingly, the feature of the state-law procedure that the district court declared unconstitutional in no way impugned the

13

prosecutor's alternative reasons for withholding the evidence. Yet the Court nonetheless held that Gutierrez had established redressability. *Id.* at *8. In this case, by contrast, the two sets of obstacles purportedly keeping Plaintiffs from carrying their firearms on public transportation are *not* independent of each other. The validity of both the Public Transit Ban and the municipal ordinances ostensibly banning firearms on public transit turns on precisely the same legal issue: whether government actors can prohibit the carrying of weapons on public transportation. The enforceability of both obstacles thus perforce must rise or fall together. At a bare minimum, the invalidity of the Public Transit Ban would accordingly "impugn" the validity of the ordinances, if not render them plainly unenforceable. *Renne v. Geary*, 501 U.S. 312, 319 (1991); *Maldonado*, 556 F.3d at 1043.

Gutierrez is fully consistent with *Haaland v. Brackeen*, 599 U.S. 255 (2023). In *Haaland*, the Supreme Court reiterated that the *judgment* must redress the plaintiff's injury, not simply the persuasive value of the opinion. *Id.* at 293–94. Because *state* officials enforced the statute in that case, and the plaintiffs only sued *federal* officials, the officials who actually enforced the law would "not be bound by the judgment." *Id.* at

14

293 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008)). The state officials may have deferred to the Supreme Court's interpretation of federal law as a practical matter, but that was not good enough to establish redressability. *Id.* at 293–94.

Neither *Gutierrez* nor this appeal presents that problem. In *Gutierrez*, it was the judgment that would have eliminated one of the prosecutor's multiple reasons for not turning over the DNA evidence for testing. There is no question that the prosecutor whose refusal to turn over the evidence would have been bound by the judgment. So too here. The judgment in favor of Plaintiffs establishes their right to carry firearms on public transit against all Defendants. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979) ("Under the doctrine of collateral estoppel . . . the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."). And Defendant Burke is the very official tasked with bringing "all . . . criminal" prosecutions, including those under the criminal-trespass statute through which the ordinances would be enforced. 55 ILCS 5/3-9005(a)(1).

If Defendant Burke sought to bring charges against Plaintiffs for carrying firearms on public transportation, she would be precluded from relitigating the issues decided in this case, including whether Plaintiffs have a Second Amendment right to carry firearms on public transportation. *See Parklane Hosiery Co.*, 439 U.S. at 326 n.5. After all, whether plaintiffs have a right to carry firearms on public buses and trains was "actually litigated and necessary to the outcome." *Id.* And as the Supreme Court explained in *Haaland*, "preclusive effect" is what makes a declaratory judgment a valid exercise of jurisdiction. 599 U.S. at 293 ("[T]he point of a declaratory judgment 'is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata.'" (quoting 18A Charles A. Wright, et al., *Federal Practice and Procedure* § 4446 (3d ed. 2022)).

*Gutierrez* makes clear that "the redressability inquiry" is not "a guess as to whether a favorable court decision will in fact ultimately" grant the plaintiff complete relief. 2025 WL 1758506, at *7. The proper question, *Gutierrez* explained, is whether the judgment the plaintiff seeks will change the "legal status" between the parties in a way that makes the ultimate relief more likely. *Id.* at *6 (quotation marks

omitted). The district court's declaratory judgment changes the parties' legal status in just this way. That judgment precludes Defendants Burke from arguing, in any subsequent Criminal Trespass action, that Plaintiffs lack a Second Amendment right to carry firearms on the subway. To be sure, the CTA claims that it would still enforce its policy and is not a party to this case, but CTA does not claim to have prosecutorial authority, so any legally binding action to enforce the policy would have to come from Defendant Burke.

D. *Gutierrez* supports Plaintiffs' standing in one additional way. *Gutierrez* reiterated the basic principle that "the substance of [the] complaint . . . is the proper focus of the standing inquiry," not the remedy granted by the district court. *Id.* The complaint in *Gutierrez* asked for broad relief. As paraphrased by the Court there, "[a]t bottom," the inmate "asserts that, to the extent Texas law precludes him from obtaining the requested evidence, it violates his rights under the Due Process Clause." *Id.* Plaintiffs' complaint in this case requested similarly broad relief. It not only asked the Court to enjoin and declare unlawful the Public Transportation Carry Ban, but also "all related laws, regulations, policies, and procedures." Compl., Dist. Ct. Doc. 1 at 21 (Prayer for Relief)

(Sept. 20, 2022). Much like the inmate in *Gutierrez*, Plaintiffs' complaint here asserted a broad right and asked the Court to declare any "law[], regulation[], polic[y], [or] procedure[]" inconsistent with that right to be unlawful. *Id.* That prayer encompasses the relevant ordinances here, and because "the proper focus of the standing inquiry" is the complaint, not "the declaratory judgment the District Court later issued," this Court could resolve the entire standing inquiry by construing the Plaintiffs' complaint to include all regulations that infringe on their right to carry firearms on public transportation. *Gutierrez*, 2025 WL 1758506, at *6.

Dated: July 11, 2025

David G. Sigale
(Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
Tel: (630) 452-4547
Fax: (630) 596-4445
dsigale@sigalelaw.com

Respectfully submitted,

/s/David H. Thompson
David H. Thompson
    *Counsel of Record*
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7), and Circuit Rule 32(c), because it contains 3,580 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(b) because it has been prepared in a proportionately spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook font.

Dated: July 11, 2025        <u>/S/ David H. Thompson</u>
David H. Thompson
*Attorney for Plaintiffs-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ David H. Thompson</u>
David H. Thompson
*Attorney for Plaintiffs-Appellees*